U.S. COURT OF APPEALS DOCKET NO. 13-56817

---

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

FRANK O'CONNELL, et al.,
Plaintiffs/Appellees,

vs.

J.D. SMITH, et al.,
Defendants/Appellants.

---

On Appeal from the United States District Court
For The Central District of California
U.S.D.C. No. CV 13-01905 MWF (PJWx)
Honorable Michael W. Fitzgerald

---

## PLAINTIFFS/APPELLEES'
## ANSWERING BRIEF

---

BARRETT S. LITT, SBN 45527
LINDSAY B. BATTLES, SBN 262862
KAYE, McLANE, BEDNARSKI & LITT, LLP
234 East. Colorado Boulevard., Suite 230
Pasadena, California 91101
Phone: (626) 844-7660
Fax: (626) 844-7670
E-Mail: blitt@kmbllaw.com

Attorneys for Plaintiffs/Appellees
FRANK and NICHOLAS O'CONNELL

I.      INTRODUCTION ................................................................1

II.     STATEMENT OF JURISDICTION ...................................2

III.    STATEMENT OF ISSUE PRESENTED ............................2

IV.     STANDARD OF REVIEW .................................................3

V.      STATEMENT OF THE CASE ............................................3

A.      Procedural Background ......................................................3

B.      STATEMENT OF FACTS..................................................5

        1.      The 1984 - 1985 Murder Investigation & Prosecution ..............6
        2.      The LASD Failed to Disclose Material Exculpatory Evidence..9
        3.      Evidence of Innocence ............................................11
        4.      The Claims In This Case And In This Appeal.........................11

VI.     SUMMARY OF ARGUMENT ........................................12

VII.    ARGUMENT ...................................................................15

        A. This Court's Decision in *Jackson v. Brown* Recognizes That the
           Relevant Constitutional Rule Was Established "at Latest" In 1972
           With The U.S. Supreme Court's Decision In *Giglio*......................15

        B. The Ninth Circuit's 1978 Decision in *United States v. Butler*
           Constitutes Precedential Authority for the Relevant Constitutional
           Rule ..............................................................................17

           1.      The Relevant Language in Butler Is Not Dicta........................19
           2.      The Constitutional Right Post-Butler Was Not Ambiguous ....21
           3.      Subsequent Citations to Butler  Have No Bearing on Its
                   Precedential Value ................................................23

        C. *Kyles v. Whitney* Did Not Recognize for the First Time That *Brady*
           Imposes Obligations on Police Officers............................................24

i

1.  The Kyles  Decision Refutes Any Argument That the Court
    Announced A New Rule ..........................................................25
2.  Kyles Falls With in A Long Line of Cases Recognizing
    Criminal Defendants' Right to Exculpatory Evidence Possessed
    by the Government, Regardless of Which Government Actor
    Actually Possesses It..............................................................27
3.  Brady Itself Establishes Police Officers Constitutional
    Obligation to Disclose Exculpatory Evidence .........................29

D. The Ninth Circuit's Decision in *Tennison v. City & County of San
   Francisco* Supports the Conclusion That The Relevant Constitutional
   Rule Was Established No Later than 1979 – 1980and as Early as
   *Brady v. Maryland* (1964) ................................................................36

E. Most Circuits to Have Examined the Issue Concur that by 1984/1985
   It Was Cleary Established That Police Officers' Suppression of
   Material, Exculpatory Evidence Violates *Brady*................................38

VIII.      CONCLUSION…………………………………………………..43

ii

# TABLE OF AUTHORITIES

## FEDERAL CASES

*A.D. v. California Highway Patrol*
 712 F.3d 446 (9th Cir. 2013) ...............................................................3

*Barbee v. Warden*
 331 F.2d 842 (4th Cir. 1964) ...............................................18, 21, 42

*Boyd v. Benton County*
 374 F.3d 773 (9th Cir.2004) ..............................................................39

*Brady v. Maryland*
 373 U.S. 83 (1963)...................................................................passim

*Calabretta v. Floyd*
 189 F.3d 808 (9th Cir. 1999) ........................................................31, 32

*California v. Trombetta*
 467 U.S. 479 (1984)......................................................27, 28, 29, 34

*Cetacean Community v. Bush*
 386 F.3d 1169 (9th Cir. 2004) ............................................................19

*Conley v. City & Cnty. of San Francisco*
 2013 WL 5379376 (N.D. Cal. Sept. 24, 2013)..................................19

*Devereaux v. Abbey*
 263 F.3d 1070 (9th Cir. 2001) .......................................................22, 30

*Elder v. Holloway*
 510 U.S. 510 (1994).....................................................................15, 16

*Eng v. Cooley*
 552 F.3d 1062 (9th Cir. 2009) ............................................................3

*Fields v. Wharrie*
 672 F.3d 505 (7th Cir. 2012) .............................................................35

*Franks v. Smith*
 717 F.2d 183 (5th Cir.1983) ..............................................................32

iii

*Freeman v. Georgia*
599 F.2d 65 (5th Cir. 1979) ........................................................27, 40

*Freeman v. State of Ga.*
599 F.2d 65-71 (5th Cir. 1979) ...........................................................18

*Geter v. Fortenberry*
849 F.2d 1550 (5th Cir. 1988) ..............................................34, 39, 42

*Gibson v. Superintendent of N.J. Dept. of Law & Pub. Safety-Div. of State
Police*
411 F.3d 427 (3d Cir. 2005), *overruled on other grounds by Dique v. N.J.
State Police*, 603 F.3d 181 (3d Cir. 2010) .............................40, 41, 42

*Goodwin v. Metts*
885 F.2d 157 (4th Cir. 1989........................................................40, 41

*Hopkins v. Boncicino*
573 F3d 752 (9th Cir. 2009) ...............................................................39

*Imbler v. Craven*
298 F. Supp. 795 (C.D. Cal. 1969), *aff'd sub nom. Imbler v. California*,
424 F.2d 631 (9th Cir. 1970) ...............................................................18

*Jackson v. Brown*
513 F.3d 1057 – 74 (9th Cir. 2008) .............................................passim

*Jean v. Collins*
221 F.3d 656 (4th Cir. 2000) ......................................................35, 41

*Jones v. City of Chicago*
856 F.2d 985 (7th Cir. 1988) ......................................................34, 42

*Kyles v. Whitley*
514 U.S. 419 (1995)..........................................................................passim

*Lane v. Franks*
13-483, 2014 WL 2765285 (U.S. June 19, 2014)........................36, 39

*McMillian v. Johnson*
88 F.3d 1554, *amended on other grounds on reh'g*, 101 F.3d 1363 (11th
Cir. 1996) .............................................................................................39

iv

*Miranda B. v. Kitzhaber*
    328 F.3d 1181 (9th Cir.2003) .............................................................20

*Moldowan v. City of Warren*
    578 F.3d 351 (6th Cir. 2009) ....................................................passim

*Mooney v. Holohan*
    294 U.S. 103 (1935)................................................................32, 33, 34

*Moore v. Illinois*
    408 U.S. 786 (1972)........................................................................27, 28

*Moreta-Ramirez v. Lemert*
    156 F. Supp. 2d 138 (D.P.R. 2001) ..................................................41

*Nanton v. Mecka*
    2:11-CV-6132 JAD, 2013 WL 1844756 (D.N.J. Apr. 30, 2013) .......................42

*Newsome v. McCabe*
    256 F.3d 747 (7th Cir. 2001) .................................................34, 36, 37

*Newsome v. McCabe*
    256 F. 3d 7477 .......................................................................14, 37

*O'Donnell v. Brown*
    335 F. Supp. 2d 787 (W.D. Mich. 2004) ...........................................32

*Padgett v. Wright*
    587 F.3d 983 (9th Cir. 2009) ........................................................3, 4

*Pearson v. Callahan*
    555 U.S. 223 (2009)..........................................................................30

*Pyle v. Kansas*
    317 U.S. 213 (1942)................................................................22, 32, 33

*Rivero v. San Francisco*
    316 F.3d 857 (9th Cir. 2002) .......................................................38, 39

*Smith v. Florida*
    410 F.2d 1349 (5th Cir. 1969) .........................................................19

v

*Smith v. Sec'y of New Mexico Dep't of Corr.*
50 F.3d 801 (10th Cir. 1995) .............................................................................33

*Steidl v. Fermon*
494 F.3d 623 (7th Cir. 2007) .............................................................................34

*Taylor v. Waters*
81 F.3d 429 (4th Cir. 1996) ........................................................................41, 42

*Teague v. Lane*
489 U.S. 288 (1989).............................................................................2, 15, 16

*Tennison v. City & County of San Francisco*
No. 04-0574-CW, 2006 WL 733470 (N.D. Cal. Mar. 22, 2006) ......................36

*Tennison v. City and County of San Francisco*
570 F.3d 1078 (9th Cir. 2009) ....................................................................passim

*Tiscareno v. Anderson*
639 F.3d 1016, *opinion vacated in non-pertinent part on reh'g*, 421 F.
App'x 842 (10th Cir. 2011) ..............................................................................42

*U.S. ex rel. Smith v. Fairman*
769 F.2d 386 (7th Cir. 1985) .............................................................................19

*United States v. Bagley*
473 U.S. 667 (1985)....................................................................................27, 28

*United States v. Butler*
567 F.2d 885 (9th Cir. 1978) ....................................................................passim

*United States v. Endicott*
869 F.2d 452 (9th Cir. 1989) .............................................................................18

*United States v. Gamez-Orduno*
235 F.3d 453 (9th Cir. 2000) ...............................................................................2

*United States v. Gerard*
491 F.2d 1300 (9th Cir. 1974) ..........................................................................20

*United States v. Giglio*
405 U.S. 150 (1972)..................................................................................passim

vi

*United States v. Hsieh Hui Mei Chen*
754 F.2d 817 (9th Cir. 1985) ...............................................................18

*United States v. Jernigan*
492 F.3d 1050 (9th Cir. 2007) ...........................................................23

*United States v. Valenzuela-Bernal*
458 U.S. 858 (1982)............................................................................27

*Walker v. City of New York*
974 F.2d 293 (2d Cir. 1992) ...............................................................40

*Walsh v. Erie Cnty. Dep't of Job & Family Servs.*
240 F. Supp. 2d 731 (N.D. Ohio 2003) ..............................................32

*White v. Pierce County*
797 F.2d 812 (9th Cir.1986) ...............................................................31

*Williams v. Ryan*
623 F.3d 1258 (9th Cir. 2010) ...........................................................23

*Williams v. Taylor*
529 U.S. 362 (2000)..............................................................15, 41, 42

*Wilson v. Layne*
526 U.S. 603 (1999)............................................................................38

*Youngblood v. West Virginia*
547 U.S. 867, 126 S.Ct. 2188, 165 L.Ed.2d 269 (2006) (per curiam) ..............36

## OTHER CASES

*in Interest of A.R.*
937 P.2d 1037 (Utah App.1997).........................................................32

## CONSTITUTIONAL PROVISIONS

Fourteenth Amendment ..........................................................1, 2, 34, 35

Fourth Amendment ......................................................................32, 41

vii

## I.    INTRODUCTION

This §1983 lawsuit arises from Plaintiff-Appellee Frank O'Connell's wrongful conviction. On January 15, 1985, Frank O'Connell (hereafter, "Mr. O'Connell") was convicted of first degree murder in the death of Jay French, a crime for which he consistently maintained his innocence since the day of his arrest. Mr. O'Connell was sentenced to 25 years to life imprisonment and spent 27 years in custody before a state court granted his petition for writ of habeas corpus in 2009. Mr. O'Connell claims in this lawsuit that Defendant-Appellant LASD homicide detectives, J.D. Smith and Gilbert Parra (deceased) violated his due process right to a fair trial by failing to disclose exculpatory information regarding alternate suspects and the reliability of eyewitness identification.[1]

The instant interlocutory appeal presents a simple qualified immunity issue: whether, by 1984/1985, it was clearly established that the suppression of material, exculpatory evidence *by police officers* results in a violation of due process under the Fourteenth Amendment and *Brady v. Maryland*, 373 U.S. 83 (1963) (hereafter "*Brady*"). As the Ninth Circuit has recognized, this principal was established no later than the U.S. Supreme Court's decision in *United States v. Giglio*, 405 U.S.

---

[1] Appellees assert various additional theories of liability, including violation of Mr. O'Connell's due process rights by way of suggestive eyewitness identification procedures, reckless investigation, and fabrication of evidence. EOR 179 – 191. For the purpose of this brief, we focus on the *Brady* violations as the primary theory of liability.

1

150 (1972) (hereafter "*Giglio*"), and reaffirmed by the Ninth Circuit's 1978

decision in *United States v. Butler*, 567 F.2d 885, 891 (9th Cir. 1978) (hereafter

"*Butler*") *Jackson v. Brown*, 513 F.3d 1057, 1072 – 74 (9th Cir. 2008) (habeas case

rejecting argument that  *Kyles v. Whitley*, 514 U.S. 419 (1995), announced a new

rule of criminal procedure under *Teague v. Lane*, 489 U.S. 288 (1989) because

*Giglio* compelled the rule applied in *Kyles*). In light of *Butler* and *Jackson*, there

can be no dispute that, in 1984/1985, any reasonable police officer would have

known that the suppression of exculpatory evidence violates the constitution.

## II.     STATEMENT OF JURISDICTION

Appellees do not dispute the Statement of Jurisdiction set forth in

Defendant's Opening Brief.

## III.    STATEMENT OF ISSUE PRESENTED

Was it clearly established by 1984/1985[2] that a police officer's suppression

of material, exculpatory evidence would violate a criminal defendant's Fourteenth

Amendment due process rights under *Brady v. Maryland*, 373 U.S. 83 (1963).[3]

---

[2] Although Mr. O'Connell's due process right to a fair trial was not violated until
1985, Defendant Smith and Parra's relevant conduct that caused the violation—the
suppression of material, exculpatory evidence—began in January 1984 and
continued through trial in January 1985. The suppression could have been cured by
belated disclosure prior to Mr. O'Connell's trial. *United States v. Gamez-Orduno*,
235 F.3d 453, 461 (9th Cir. 2000). This temporal distinction is not relevant in this
case, because the due process right in question was clearly established as far back

2

## IV.  STANDARD OF REVIEW

Interlocutory appeals challenging a district court's denial of qualified immunity are limited to issues of law, which are reviewed *de novo*. *Eng v. Cooley*, 552 F.3d 1062, 1067 (9th Cir. 2009). Qualified immunity issues that are not raised in the pleadings before the district court are considered waived. *Padgett v. Wright*, 587 F.3d 983, 985 n.2 (9th Cir. 2009).

## V.  STATEMENT OF THE CASE

### A.  Procedural Background

On January 15, 1985, Frank O'Connell was arrested for the murder of Jay French, a crime for which he consistently and unwaveringly maintained his innocence. O'Connell was convicted and sentenced to 25 years to life imprisonment. He spent over 27 years in prison before a state court granted his petition for habeas corpus on March 29, 2012. Following the reversal, the District Attorney's Office declined to re-prosecute and all charges were dismissed. Excerpts of Record (EOR) 160 – 163, FAC ¶¶1-9.

---

as the 1960s, and certainly well before 1984. Nevertheless, for the sake of formality, Appellees will refer to the relevant time period as "1984/1985."

[3] Qualified immunity analysis has two parts. First, did the defendant violate the plaintiff's constitutional rights, and second, was the constitutional right in question clearly established. *A.D. v. California Highway Patrol*, 712 F.3d 446, 453 (9th Cir. 2013) (citing *Pearson v. Callahan*, 555 U.S. 223 (2009)). This appeal focuses exclusively on the second "clearly established" part of the analysis. AOB, p. 14 – 16.

The habeas petition was granted on the basis of uncontested evidence that LASD detectives had failed to disclose handwritten notes containing: (1) material eyewitness impeachment evidence, including uncontested testimony that detectives improperly affirmed the only eyewitness's identification in his presence and undisclosed notes reflecting that the prosecution's second key, Maurice Soucy, witness had in fact failed to make a positive ID (RJN, Ex. 1 (Order Granting Petition for Writ of Habeas) (hereafter "Habeas Order") 3:6-22); and (2) material information concerning a prior murder attempt, committed by the victim's ex-wife and her friend, Randy Smith, a man resembling Frank O'Connell (RJN, Ex. 1, 6:6-26). To be clear, the habeas order was not granted solely or even primarily on the basis of Mr. Druecker's (contested) testimony that detectives had pressured him into making an identification. RJN 1-8.

In this civil rights lawsuit, Appellees contend that detectives withheld material, exculpatory information concerning alternate suspects, some of which has only come to light during the course of discovery in this case.[4] Appellees further

_____

[4] Additional evidence regarding additional alternative suspects, not known to Plaintiffs at the time of the habeas and the filing of the complaint, has come to light through discovery. For this reason, it is not specified in the complaint. Because the Defendants appear to suggest that the Court should be relying on the intricate specifics of the exculpatory evidence, and because they resort to making claims outside of the record, the O'Connells want to advise the Court that, if necessary, they would be in a position to add to the alternative suspect evidence alleged in the complaint. Specifically, discovery has disclosed that LASD detectives received an

4

contend that detectives improperly influenced eyewitnesses, misrepresented in police reports what those witnesses actually said even after they were improperly influenced, and failed to disclose that they had done so. Such disclosure would have virtually negated any weight afforded to the eyewitnesses' testimony, and largely eviscerated the prosecution's case.

On July 29, 2013, Defendants-Appellants J.D. Smith and Eric Parra filed a motion for judgment on the pleadings, which moved for dismissal based on their contention that, in 1984/1985, no clearly established law required police officers to disclose material, exculpatory evidence. On September 23, 2013, the District Court denied the motion.

B.    STATEMENT OF FACTS[5]

_____

anonymous tip disclosing that the Ms. Lyon's paid $7,000 to a man from Oregon, who in turn, hired a contract killer in Pasadena to carry out the shooting. The significance of this information would have been immediately apparent to detectives, given their knowledge regarding Randy Smith, including that he lived in Oregon. The detectives' notes, not disclosed during the 1985 trial, reveal that they followed up on the anonymous tip and observed a car matching descriptions of the getaway vehicle at the alleged hit man's possible residence. This information closely matches confessions made by Ms. Lyon after Mr. O'Connell's conviction that she had hired a hit man. See EOR ____, § v(b)(3), *infra*.

[5] The legal question at issue in this appeal does not require extensive discussion of the facts of the case, much less disputes over the facts. However, because Defendants provided a significantly inaccurate and misleading statement of Facts, we provide what we believe is a far more accurate rendition of the facts alleged in the complaint.

5

### 1.    THE 1984 - 1985 MURDER INVESTIGATION & PROSECUTION

On January 5, 1984, Jay French was gunned down in the parking structure of the apartment complex where he lived and worked. Officers arrived to the scene moments after the shooting. Jay French told them that he had been shot by a man in a yellow Pinto station wagon.

Only one eyewitness, Daniel Druecker, observed the shooting. Detectives located two additional witnesses, each of whom briefly observed the shooter and getaway car: Arturo Villareal, who had been delivering flowers across the street at the time of the murder; and Alex Sanchez, a flagman who observed the car speed away from the scene. Mr. Druecker and Mr. Villareal gave physical descriptions, though they varied in their description of the suspect's hair color, height and weight.

Later the same evening, Los Angeles Sheriff's Department Detectives interviewed Jay French's then-wife, Gina French. Gina French told investigators that, as he lay dying, Mr. French said "this had to be somebody or something to do with Jeanne." Ms. French advised detectives that Mr. French had been in a longstanding custody dispute with Ms. Lyon and that she, with a friend from Oregon, Randy Smith, had once tried to run over Jay French while he rode his motorcycle on the way to work. EOR 173:19 – 174:15. This information was

6

memorialized in the detectives' handwritten notes but omitted from police reports and was never disclosed to the prosecutors or the defense.

During the course of the interview, Ms. French mentioned Frank O'Connell to the detectives as a cousin of Jeanne Lyon's. Jeanne Lyon later confirmed that, she and Frank O'Connell had lived together for approximately six weeks, during the summer of 1983, while she and her husband were separated. This brief romantic connection ended in August 1983 (see EOR, p. 178:11-12), but became the basis for the detectives' suspicions concerning Mr. O'Connell. [6]

With no physical evidence or other information linking Mr. O'Connell to the crime, detectives administered a 6-pack photo lineup to eyewitnesses Daniel Druecker, Arturo Villareal and Alex Sanchez. Mr. Sanchez could not make an identification. Police reports represented that Mr. Villareal and Mr. Druecker both identified Mr. O'Connell's photo. During the 1985 trial, Mr. Druecker maintained his identification. Mr. Villareal, however, expressly denied that he had made an identification. At trial, he testified that he had been unable to identify the suspect from the 6-pack and ultimately chose two photographs as possible matches. EOR

---

[6] Without citing to the record, Appellants misleadingly imply that Frank O'Connell was having an affair with Jeanne Lyon at the time her ex-husband was murdered. All of the evidence adduced in this case indicates there was no affair at the time of the murder in January 1984. Most significantly, for purposes of this appeal, the Complaint clearly alleges that there was no liaison between Mr. O'Connell and Ms. Lyon at the time of the murder.

171:3-16. Thus, contrary to Appellants' misleading description of the facts, the complaint alleges that Mr. Druecker was the only witness who purported to identify Mr. O'Connell as the shooter.

Equally important to the prosecution's case was the testimony of Maurice Soucy. Mr. Soucy, a neighbor of Jeanne Lyon's, was the only witness who purportedly linked Mr. O'Connell to a car matching eyewitnesses' descriptions of the getaway vehicle. Police reports falsely stated that, at the photo spread, Mr. Soucy identified Mr. O'Connell as the driver of a yellow, Pinto station wagon parked outside of Ms. Lyon's house. EOR 171:18 – 173:14. As we discuss below, the detectives' handwritten notes reflect that Mr. Soucy did not make a clear identification, as the police report stated he had. Moreover, at trial, his identification testimony was contradicted by several other neighbors who disputed that Mr. O'Connell had ever been seen in connection with a yellow, Pinto station wagon, and likewise disputed having seen a yellow, Pinto station wagon in the neighborhood. EOR 174:18 – 24.

Mr. O'Connell's defense included three alibi witnesses, all of whom placed Mr. O'Connell at his residence, 25 miles away, in La Verne, California, at the time of the murder. EOR 174:25 – 175:8. There was no physical evidence and no credible evidence of motive.

8

## 2. THE LASD FAILED TO DISCLOSE MATERIAL EXCULPATORY EVIDENCE

### a) Alternate Suspect Evidence

The habeas decision found that Detectives failed to disclose critical, exculpatory information regarding possible alternate suspects. Their 1984 – 1985 murder investigation revealed that Jay French's ex-wife and a male associate named Randy Smith had allegedly made a previous attempt on Mr. French's life. Police further knew that Mr. Smith matched some eyewitnesses' general description[7] of the person who killed Jay French, strongly suggesting an alternative suspect and directly implicating his former wife. As the habeas decision emphasizes, the information contained in the notes remained unknown to both the prosecution and defense until *immediately prior to Mr. O'Connell's 2012 habeas hearing*. This information alone would have been sufficient to change the outcome of the trial. RJN, Ex. 1, 1:19 – 2:14,6:1 – 7:8, 7:23 – 26. See also Fn. 4 regarding

---

[7] According to Defendants-Appellants, police confirmed that Randy Smith was 5'9 (shorter than the person Druecker identified). AOB, p. 9. This wrongly implies that Randy Smith was irrelevant because he did not match the eyewitness descrtion. First, the information was exculpatory regardless of whether Mr. Smith was ruled out as the actual shooter because it shows that Ms. Lyon had made a previous attempt on Mr. French's life. Moreover, while Randy Smith is shorter than the person described by Mr. Druecker, his height was consistent with the person Arturo Villareal described.

Further, Defendants contend, without citation, that Randy Smith was in prison at the time of the murder. This is improper because no such allegation is contained in the complaint. Additionally, Plaintiffs-Appellees dispute that the evidence establishes that Randy Smith was incarcerated on the day of the murder.

additional alternative suspect evidence recently disclose and not included in the complaint.

### b)      Eyewitness Impeachment

It was uncontested during the habeas proceedings that the LASD withheld material, exculpatory information concerning both Mr. Druecker and Mr. Soucy. First, undisclosed notes reflected that Maurice Soucy, the sole witness linking Mr. O'Connell to the getaway vehicle, <u>did not select Mr. O'Connell's photo from a six-pack as indicated in police reports</u> (and in Mr. Soucy's trial testimony). Rather, Mr. Soucy chose *two* photos from the 6-pack. Mr. Soucy's indication of two suspects from the photo spread was omitted from police reports and never disclosed to the District Attorney's Office or the defense. EOR 171:17 – 173:11; RJN, Ex. 1, 4:14 – 5:23.

Second, Detectives impermissibly affirmed the correctness of Mr. Druecker's selection of Mr. O'Connell in his presence, yet failed to disclose that they had done so, preventing cross-examination on the reliability of the identification. EOR, 169:3-8; RJN 3:6 – 22. At the habeas evidentiary hearing, Mr. Druecker testified that detectives in fact pressured him to make a photo-identification even after he told them he couldn't; he also testified that they improperly affirmed his choice after he had made a selection. EOR 168:9 – 169:8. While the Los Angeles Sheriff's Department contested that he was pressured into

10

making an identification, LASD Detective J.D. Smith did not contest that the

improper affirmation occurred and that it was suppressed, thus, as the habeas court

noted, making that an uncontested fact. RJN, Ex. 1, 4:14 – 5:23.

### 3.   EVIDENCE OF INNOCENCE

As the habeas order acknowledges, the significance of the suppressed

alternate suspect evidence <u>is underscored by new information that surfaced during

the habeas investigation</u>. RJN, Ex. 1, 6:27 – 7:8. Compelling evidence uncovered

during Mr. O'Connell's habeas investigation shows that Mr. O'Connell had no

involvement with the murder and that the crime was orchestrated by Mr. French's

ex-wife, Jeanne Lyon. EOR 176:10 – 178:25.  Several, unrelated individuals came

forward during the habeas investigation with consistent reports that the victim's

ex-wife had confessed to orchestrating the murder (see also Fn. 4) and, in several

cases, that she expressed remorse that an innocent man had been convicted and

sentenced to life. *Ibid.*

### 4.   THE CLAIMS IN THIS CASE AND IN THIS APPEAL.

Paragraph 84 of the Complaint asserts that the Defendant Detectives

deprived Frank O'Connell of his constitutional right to due process of law by, inter

alia, 1) failing to memorialize, relay and/or disclose material exculpatory evidence

and information to the prosecutors handling his case so that it could, in turn, be

provided to Plaintiff's defense counsel, thereby setting in motion a chain of events

11

that resulted in a criminal trial at which material, exculpatory evidence was suppressed by the government; 2) by deliberately fabricating information presented as evidence of Plaintiff's guilt in police reports, statements or other out of court documents thereby setting in motion a chain of events that resulted in the presentation of fabricated evidence at Plaintiff's criminal trial that was material to the outcome; 3) by engaging in suggestive eyewitness identification tactics that resulted in fundamentally unreliable eyewitness identifications that were material to the outcome at trial; and 4) by recklessly disregarding exonerating evidence, recklessly disregarding alternate suspect evidence, and coaching witnesses' testimony to falsely implicate Plaintiff in the face of contrary evidence.

It appears from Defendants' brief that the sole qualified immunity argument being asserted is as to the first claim – the withholding of exculpatory evidence. No argument is made as to the other three. Accordingly, we address only that issue.

## VI.    SUMMARY OF ARGUMENT

The District Court correctly determined that Appellants Smith and Parra are not entitled to qualified immunity because the relevant constitutional rule was established within this Circuit prior to 1984.  Plaintiffs contend that *Brady* itself clearly established the police obligation to disclose exculpatory evidence, given that the prosecutor normally only learns such information from the law enforcement officers who investigated the case. If, and to the extent, *Brady* left any

12

doubt concerning police officers' obligation to disclose exculpatory evidence, this doubt was resolved before 1984 with the Supreme Court's 1972 decision in *Giglio*, and later, the Ninth Circuit's 1978 decision in *United States v. Butler*, 567 F.2d 885, 891 (9th Cir. 1978) (holding that *Brady* required disclosure of exculpatory information in police files). This Court explicitly explained that the police obligation was established no later than 1972 in *Jackson v. Brown*, 513 F.3d 1057, 1073 – 1074 (9th Cir. 2008), when it explained that "the principle underlying this unexceptional holding [*Brady*'s application to police suppression of exculpatory evidence] dates back, *at the latest*, to the Supreme Court's decision in *Giglio v. United States*" (emphasis supplied), and that subsequent cases, particularly the 1978 *Butler* decision, made "clear that *Kyles'* holding did not creates a new rule of criminal procedure." .

Appellants insist that the pertinent language in *Butler* is dicta and does not constitute precedential authority. This argument stands in direct conflict with *Jackson*, which characterized the pertinent language as part of the holding. *Id*. at 1074 (citing *Butler*, "In 1978, we held that…"). Appellants also claim that *Butler* was not controlling authority in 1984/1985 because the relevant language was not cited by any subsequent Ninth Circuit case until after 1984.  This argument reflects a fundamental misunderstanding of qualified immunity analysis. A constitutional right is clearly established once a precedential decision recognizes the right with

13

sufficient particularity. When the decision is next cited within the jurisdiction has nothing to do with its precedential value.

Along similar lines, Appellants assert that *Butler* should be disregarded because there is not a single reference to *Butler* in the Ninth Circuit's 2009 decision in *Tennison v. City and County of San Francisco*. This argument is frivolous. The *Tennison* panel cited *Newsome v. McCabe*, 256 F. 3d 7477, 752-53, which held that qualified immunity did not apply to police suppression of evidence in 1978 – 1979 because police officers' obligation to produce exculpatory evidence was clearly established with the U.S. Supreme Court's decision in *Brady* (1964). *Tennison*'s cite to *Newsome* supports the conclusion that the relevant constitutional rule was established as early as 1964. Why *Tennison* did not cite *Butler* or *Jackson* is pure speculation and is irrelevant because it does not affect whether the principle was clearly established, at least in this Circuit.

Appellants further argue that qualified immunity should apply in light of a purported split among the circuits as to whether police officers' suppression of exculpatory evidence violates *Brady*. Appellants mischaracterize the legal landscape as they have identified only one circuit opinion concluding that police officers' obligations under *Brady* were not established prior to 1985. More importantly, even if there had been a circuit split, it would have no bearing on the analysis so long as the right was clearly established within the Ninth Circuit.

14

## VII.  ARGUMENT

### A.  This Court's Decision in *Jackson v. Brown* Recognizes That the Relevant Constitutional Rule Was Established "at Latest" In 1972 With The U.S. Supreme Court's Decision In *Giglio*

In *Jackson v. Brown*, a habeas case, petitioner asserted that his conviction was unconstitutional because the police suppressed favorable evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963) and *Kyles v. Whitley*, 514 U.S. 419 (1995). The state argued that the relevant rule was not announced until the U.S. Supreme Court's decision in *Kyles*, and therefore, under *Teague v. Lane*, 489 U.S. 288 (1989), the rule could not be applied retroactively to Jackson's 1981-finalized conviction. Under *Teague*, courts determine "whether the Constitution, as interpreted by the precedent then existing, compels the rule"; this is "the functional equivalent of . . . reliance on 'clearly established law.'" *Williams v. Taylor*, 529 U.S. 362, 379 (2000); *Jackson*, 513 F.3d at 1073. Qualified immunity likewise requires evaluation of precedent to determine "clearly established law." *Elder v. Holloway*, 510 U.S. 510, 512 (1994).

The Ninth Circuit firmly rejected the government's argument. As the Ninth Circuit explained: "*Kyles* may have been the first Supreme Court case to find a *Brady* violation where the suppressed evidence was known only to the police, but it did not create a new rule . . . . [In] 1981, the . . . Constitution, as interpreted by *Brady* and *Giglio*, compelled [the rule applied in *Kyles*]." *Id.* at 1073-74. "Indeed

15

the principle underlying this unexceptional holding [in *Kyles*] dates back, at the latest, to the Supreme Court's decision in *Giglio v. United States*…" *Id.* at 1073. As *Jackson v. Brown* explained,

> "*Giglio*'s focus on the responsibility of the prosecutor to investigate all promises made on behalf of the government *extends to promises made by the police, who also make any such promises as spokespersons for the government, and for whom the prosecutor bears responsibility*." *Jackson*, 513 F.3d at 1073 (emphasis added).

In addition to *Giglio*, *Jackson* cited the Ninth Circuit's decision in *Butler* to demonstrate that the rule was not novel, and existed as of 1981.[8] *Id.* at 1074 ("…*Kyles* holding did not create a new rule of criminal procedure. In 1978, we held that [*Brady* encompasses exculpatory evidence withheld by police]," citing *U.S. v. Butler* at 891)). The state's unsuccessful argument in *Jackson* is the same as Defendant-Appellant's argument in support of qualified immunity for the 1984/1985 *Brady* violation alleged in this civil rights case. Because both *Teague* and qualified immunity require a rule of law to be "clearly established" or "compelled" by precedent, *Jackson* answers the question posed by this interlocutory appeal. Since the operative date in Jackson was 1981, it too compels the conclusion that Defendants' contentions here must be rejected.

---

[8] The crime occurred in 1977; Jackson was convicted in 1979; his habeas petition raising the police suppression of exculpatory evidence was filed in 1981, the date the Court used in analyzing *Teague*'s application of the clearly established law equivalent to Jackson's case

16

**B.     The Ninth Circuit's 1978 Decision in *United States v. Butler* Constitutes Precedential Authority for the Relevant Constitutional Rule**

In *United States v. Butler*, 567 F.2d 885, 889 (9th Cir. 1978), the Ninth Circuit ruled that a *Brady* violation occurs where the government fails to disclose material, exculpatory information maintained in police files, irrespective of whether the information was known to the prosecutor. *Butler* involved promises of leniency made to a cooperating witness by police, which were unknown to the prosecutor and therefore never turned over to the defense. The government maintained that no *Brady* violation occurred because (1) the evidence of promises made to a cooperating witness was not material to the outcome; and (2) the promises were not known to the prosecutor. The Ninth Circuit rejected both arguments. Regarding the second, the Ninth Circuit specifically held that non-disclosure of material, exculpatory evidence renders a conviction unconstitutional even where the evidence was known only to the police and not the prosecutor:

> …[T]he district court found that no one from the United States Attorney's office had made any direct promises to [cooperating witness]. While this new factual finding is supported by the evidence and is not clearly erroneous, it does not affect the outcome of this case.… The prosecutor is responsible for the non-disclosure of assurances made to his principal witnesses even if such promises by other government agents were unknown to the prosecutor. Since the investigative officers are part of the prosecution, the taint on the trial is no less if they, rather than the prosecutor were guilty of nondisclosure.

17

*Butler*, 567 F.2d at 889 (citing *Giglio v. United States*, 405 U.S. 150, 154, 92 S.Ct. 763 (1972), and *Barbee v. Warden*, 331 F.2d 842, 846 (4th Cir. 1964), a seminal Fourth Circuit case on this issue).[9] *See also*, *Imbler v. Craven*, 298 F. Supp. 795, 811 (C.D. Cal. 1969), *aff'd sub nom. Imbler v. California*, 424 F.2d 631 (9th Cir. 1970) ("no doubt that had [material, exculpatory] evidence . . . been deliberately suppressed by the police, even if the prosecuting attorney was not aware of its existence, due process would clearly have been violated."). *Butler* quotes *Barbee*, 331 F.2d at 846 (4th Cir. 1964), which overturned a 1957 assault conviction due to police failure to disclose potentially exculpatory ballistics and fingerprint evidence and explained that "[f]ailure of the police to reveal … material evidence … is equally harmful to a defendant" whether done purposely, or negligently.'' It makes "no difference if the withholding is by officials other than the prosecutor." The police are also "part of the prosecution" because the violation of defendant's rights is the same as if done by the prosecution.[10]

---

[9] This conclusion has been affirmed by numerous, subsequent Ninth Circuit decisions. *See e.g.*, *See  United States v. Endicott*, 869 F.2d 452, 456 (9th Cir. 1989) (non-disclosure of material, exculpatory evidence known only to government agents, and not to prosecutors, can be the basis of a *Brady* violation); *United States v. Hsieh Hui Mei Chen*, 754 F.2d 817, 824 (9th Cir. 1985) (*Brady* extends to "material contained in the government's files . . . [including] any information within the possession or control of law enforcement personnel").

[10] A multitude of circuit court cases mirror *Butler*. *See e.g., Freeman v. State of Ga.*, 599 F.2d 65-71 (5th Cir. 1979) (violation of due process when police conceal exculpatory or impeachment evidence;…"the policeman's conduct must be

If there was any ambiguity after *Brady* and *Giglio*, and Mr. O'Connell contends there was not, *Butler* definitively disposed of it. After *Butler*, no *reasonable* officer could conclude that s/he was not constitutionally obligated to disclose *Brady* material. *Conley v. City & Cnty. of San Francisco*, 2013 WL 5379376 (N.D. Cal. Sept. 24, 2013) (for qualified immunity purposes, the Ninth Circuit's 1978 decision in *Butler* clearly established police officers' obligation to disclose exculpatory evidence).

### 1. THE RELEVANT LANGUAGE IN BUTLER IS NOT DICTA

*Jackson v. Brown* characterizes the pertinent language in *Butler* as a holding, *Jackson*, 513 F.3d at 1074, refuting Appellants contention that it is dicta. Even without *Jackson*, there would be no basis to disregard the pertinent language as *dicta* because it was integral to the outcome of the decision.[11] *Dictum* refers to a statement that is "…made during the course of delivering a judicial opinion but is unnecessary to the decision in the case and is therefore not precedential." *Cetacean Community v. Bush*, 386 F.3d 1169 (9th Cir. 2004); cited at AOB, p. 28. The Ninth

---

imputed to the state as part of the prosecution team," citing, *inter alia*, *Smith v. Florida*, 410 F.2d 1349, 1351 (5th Cir. 1969)); *U.S. ex rel. Smith v. Fairman*, 769 F.2d 386 (7th Cir. 1985) (nondisclosure of firearms worksheet, which revealed that subject firearm was inoperable when tested by police ballistics expert the day following the offense and therefore created a reasonable doubt as to guilt, violated due process, *citing Brady* (1963) and *Agurs* (1976)).

[11] *See also*, Black's Law Dictionary (9th ed. 2002) (*dictum* refers to a statement that is not part of the doctrine of the decision).The relevant statements do not satisfy this definition as they were indispensable to the outcome of the decision.

19

Circuit broadly construes what constitutes the law of the circuit, noting that,

"'where a panel confronts an issue germane to the eventual resolution of the case,

and resolves it after reasoned consideration in a published opinion, that ruling

becomes the law of the circuit, regardless of whether doing so is necessary in some

strict logical sense.'" *Miranda B. v. Kitzhaber*, 328 F.3d 1181, 1186 (9th Cir.2003)

(per curiam) (quoting *United States v. Johnson*, 256 F.3d 895, 914 (9th Cir.2001).[12]

In *Butler*, the Court's discussion was far more than confronting an "issue germane

to the eventual resolution of the case." Brady's application where exculpatory

evidence is known to the police but not the prosecutor was central to the

conviction's reversal.

According to Defendant Detectives, when *Butler* stated that the outcome of

the case was "not affected" by the fact that police suppressed exculpatory evidence

(as opposed to the prosecutor), the Court meant that the police officers' misconduct

had no effect on the constitutionality of the conviction. Their contention that the

Court's statements concerning the application of *Brady* to information known to

_____

[12] The Court stated that its opinion in *United States v. Gerard*, 491 F.2d 1300 (9th Cir. 1974), was "*controlling*" because that opinion had relied on *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763 (1972) for the "basic principle…[that the] *government* is obliged to disclose pertinent material evidence favorable to the defense." 567 F.2d at 888 (emphasis supplied) (internal quotation marks omitted). Thus, *Butler* considered the *Brady-Giglio* line of cases to have clearly established that the police were part of the government and were bound to act in compliance with it.

20

police were not part of the doctrine of the case (AOB at 29) flows from this wholly untenable interpretation. Unquestionably, the Ninth Circuit found that a constitutional violation occurs where material, exculpatory evidence is withheld by any member of the prosecutorial team (including police) – *whose* actions (police or prosecutor) caused the non-disclosure has "no effect" on, and is irrelevant to, *whether* a violation occurred. As *Butler* (and *Barbee*) recognized, *Brady*'s reasoning envisioned application of the rule to the prosecution generally, including the police, as the representatives of the State. *See* Section VII, C, 3 (below).

### 2.  THE CONSTITUTIONAL RIGHT POST-*BUTLER* WAS NOT AMBIGUOUS

Appellants insist that *Butler* did not sufficiently explicate police officers' obligations to disclose exculpatory evidence, yet they utterly fail to explain what aspect of the *Brady* requirement remained unclear. According to Appellants, *Butler* discussed the application of *Brady* to police officers "as a broad proposition – not in a 'particularized sense as required by the United States Supreme Court in order to 'clearly establish' a legal principal…" This argument defies logic and common sense. The qualified immunity question in this appeal is not whether a reasonable police officer would have recognized certain, particular evidence as exculpatory, but instead whether a reasonable police officer would have recognized his/her duty to disclose to the prosecutor exculpatory evidence generally, after which the

21

prosecutor would determine what to disclose to the defense. In this regard, *Butler* provides more than sufficient notice that police officers are not exempt from *Brady*.

Defendants incorrectly assert that no case put them on notice that their Brady obligations extended to "nondisclosure of exculpatory information regarding Plaintiff's identification as the murderer or the possibility of another suspect." The simple response is that *Brady* was clear that it applied to "evidence favorable to an accused," 373 U.S., at 87, 83 S.Ct. Differing versions of the eyewitness identification and evidence of alternative suspects are "self-evident[ly]" *Brady* material. It is "apparent" that they "apply with obvious clarity" to *Brady*. Thus, it is irrelevant whether or not there is "[p]recedent directly on point" establishing that "the very action in question has previously been held unlawful." *Devereaux v. Abbey*, 263 F.3d 1070, 1075 (9th Cir. 2001) (quotation marks and citations omitted). It is difficult to conceive of anything more self-evidently favorable to the defense than evidence flatly contradicting the police report and testimony about the identification or implicating a third party as the potential perpetrator. [13]

---

[13] *See also, e.g., Devereaux* ("due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government"); *Pyle v. Kansas*, 317 U.S. 213, 215-16 (1942) (allegations of "the deliberate suppression by [State] authorities of evidence favorable to [the defendant]" state a constitutional deprivation); *Giglio v. United States*, 405 U.S. 150, 154, 92 S. Ct. 763, 766, 31 L. Ed. 2d 104 (1972) ("[w]hen the 'reliability of a

### 3. SUBSEQUENT CITATIONS TO *BUTLER* HAVE NO BEARING ON ITS PRECEDENTIAL VALUE

Appellants erroneously contend that *Butler* could not have established the constitutional rule, because, prior to 1984, "no case in the Ninth Circuit cited *Butler* for a holding that *Brady* obligations applied to police officers." AOB, p. 30. Appellants cite no case to support the contention that subsequent citation determines whether the law was clearly established. The argument is devoid of merit. When the relevant holding was next cited has no bearing whatsoever on *Butler*'s precedential status, particularly since the *Butler* court was clear that the decision was mandated by the *Brady-Giglio* line of cases.

---

given witness may well be determinative of guilt or innocence,' nondisclosure of evidence affecting credibility falls within this general rule [of *Brady*]") (citing and quoting *Napue v. Illinois*, 360 U.S. 264, 269, 79 S.Ct. 1173, 1177, 3 L.Ed.2d 1217 (1959)); *Tennison v. City and County of San Francisco*, 570 F.3d 1078 (9th Cir. 2009) (clearly established, *inter alia*, in 1979-80 that police failure to disclose favorable evidence regarding the "conduct of a lineup" violated *Brady*) (citing *Newsome v. McCabe*, 256 F.3d 747, 753 (7th Cir. 2001) (clearly established that police conduct "to influence the identification" of an eyewitness violated *Brady*); *Williams v. Ryan*, 623 F.3d 1258, 1265 (9th Cir. 2010) ("evidence suggesting an alternate perpetrator is classic *Brady* material") (citations and internal quotation marks omitted); *United States v. Jernigan*, 492 F.3d 1050, 1056-57 (9th Cir. 2007) ("Withholding knowledge of a second suspect conflicts with the Supreme Court's *directive* [in *Kyles*] that 'the criminal trial, as distinct from the prosecutor's private deliberations, [be preserved] as the chosen forum for ascertaining the truth about criminal accusations.'" (Emphasis supplied).That "directive" was not first announced in *Kyles*; it is the foundation of the *Brady* framework and indeed predates it. *See, e.g., Pyle v. State of Kansas*, *supra*.

23

Along similar lines, Appellants assert that *Butler* should be disregarded because there is not a single reference to *Butler* in *Tennison*. AOB at 33. According to Appellants, the absence of any reference to *Butler* suggests that the *Tennison* panel may have been unaware of the decision. This argument equally misses the mark. Qualified immunity looks to when the right was first recognized by controlling authority; it does not require that Appellees point to subsequent cases recognizing that *Butler* clearly established the right for the purposes of qualified immunity. Nothing in *Tennison* indicates that the Ninth Circuit discounted *Butler* as controlling authority, nor is there any suggestion that the Ninth Circuit would have found the law to be unclear in 1984/1985. The opposite is true. (See Section VII, B, below). Citation to *Butler* would have further supported *Tennison*'s conclusion, but the failure to cite *Butler* does not affect *Tennison*'s conclusion that police officers' obligation to comply with *Brady* was clearly established by 1979-80.

### C.   *Kyles v. Whitney* Did Not Recognize for the First Time That *Brady* Imposes Obligations on Police Officers

Defendants repeatedly insist that police officers were not on notice that suppression of exculpatory evidence violates due process because Supreme Court cases prior to *Kyles* emphasized the duties of the prosecutor. This argument does not square with *Brady*, the constitutional underpinnings on which it rests, or §1983

24

jurisprudence establishing that government officials may be held liable where their actions *cause* a constitutional violation (regardless of whether their actions *complete* the constitutional violation).

As discussed above, *Jackson v. Brown* expressly refutes Appellants' characterization of *Kyles v. Whitney*, 514 U.S. 419, 438 (1995) as the first case to recognize that *Brady* imposes obligations on police. As *Jackson* makes clear, *Kyles* merely reiterated the uncontroversial proposition that suppression of evidence by police is no less a constitutional violation than suppression of evidence by prosecutors.

In this section, we further explain why *Kyles* cannot be read as having created a new rule, and moreover, why it has never been a close question that the suppression of exculpatory evidence by police officers violates a criminal defendant's *Brady* rights to the same degree as prosecutorial suppression.

### 1.    THE *KYLES* DECISION REFUTES ANY ARGUMENT THAT THE COURT ANNOUNCED A NEW RULE

Appellants' argument is refuted by the *Kyles* opinion itself, which makes clear that it was not announcing a new rule or, alternatively, resolving unsettled law. In addressing the materiality standard, the Court noted and categorically rejected the state's suggestion that it should not be accountable for evidence known only to the police, observing "[t]o accommodate the State in this manner would . . .

25

amount to a *serious change of course* from the *Brady* line of cases." *Id.* at 438 (emphasis added). The outlandishness of the State's argument in *Kyles* is demonstrated by the fact that, at oral argument, "[t]he State's counsel retreated from [the position], conceding that the State is 'held to a disclosure standard based on what all State officers at the time knew.'" *Id.* at 438 n.11.[14] The consistency of the "*Brady* line of cases," *Kyles*, 514 U.S. at 438, which treats all information in the possession of the prosecutor and the police as subject to *Brady*, inexorably leads to the conclusion that police officers have been on notice since *Brady* that their suppression of material, exculpatory evidence is unconstitutional.

_____

[14] Further proving that *Kyles* breaks no new ground, Justice Scalia dissented on the ground that certiorari should not have been granted in the first place, as the case presented no legal issues worthy of Supreme Court review. The dissent states: "What the Court granted certiorari to review, then, is not a decision on an issue of federal law that conflicts with a decision of another federal or state court; nor even a decision announcing a rule of federal law that because of its novelty or importance might warrant review despite the lack of a conflict; nor yet even a decision that patently errs in its application of an old rule. What we have here is an intensely fact-specific case in which the court below unquestionably applied the correct rule of law and did not unquestionably err—precisely the type of case in which we are most inclined to deny certiorari." 514 U.S. at 459-60 (Scalia, J., dissenting). In responding to this dissent, a concurring opinion by Justice Stevens confirms the basic point made by the dissent: "Our duty to administer justice occasionally requires busy judges to engage in a detailed review of the particular facts of a case, even though our labors may not provide posterity with a newly minted rule of law." 514 U.S. at 455 (Stevens, J., concurring). Between the concurring and dissenting opinions, seven of the nine justices acknowledge that the Court granted certiorari in *Kyles* to correct the lower court's improper application of established law, not to resolve uncertainty in the *Brady* standard.

### 2. *KYLES FALLS WITH IN A LONG LINE OF CASES RECOGNIZING CRIMINAL DEFENDANTS' RIGHT TO EXCULPATORY EVIDENCE POSSESSED BY THE GOVERNMENT, REGARDLESS OF WHICH GOVERNMENT ACTOR ACTUALLY POSSESSES IT*

*Kyles*, like *Brady*, falls within a line of cases that the Supreme Court has dubbed the "area of constitutionally guaranteed access to evidence," which is governed by the Due Process clause. *California v. Trombetta*, 467 U.S. 479, 484 (1984) ("[t]o safeguard [the right to present a complete defense], the Court has developed 'what might loosely be called the area of constitutionally guaranteed access to evidence."). Several of these cases arose in circumstances where the evidence at issue was not in the possession of the prosecutor. *United States v. Bagley*, 473 U.S. 667, 671 & n.4 (1985) (remanding to the circuit court to determine whether documents possessed by the investigating agency, *but not known to the prosecutor*, were material such that non-disclosure violated *Brady*); *United States v. Valenzuela-Bernal*, 458 U.S. 858, 866, 872-74 (1982) (holding that the government's deportation of a witness does not violate a defendant's due process rights unless the witness possesses material, exculpatory evidence and citing a Fifth Circuit case in which a police detective violated *Brady* by concealing a material witness to the crime, *Freeman v. Georgia*, 599 F.2d 65, 69 (5th Cir. 1979)); *Moore v. Illinois*, 408 U.S. 786, 787, 798 (1972) (listing one of the four questions presented as "the nondisclosure to the defense of allegedly exculpatory

27

evidence possessed by the prosecution *or the police*" and holding that the evidence, some of which may have been known only to the police, was not sufficiently material to constitute a *Brady* violation (emphasis added)). In all of these cases, the fact that the suppression was caused by state actors other than the prosecutor did not alter the Supreme Court's due process analysis.

Appellants erroneously assert that *Giglio*, *Bagley, Moore* and *Agurs* provide no support for the proposition that police officers had obligations under *Brady*. AOB, pp. 21, 22. As discussed above, *Bagley* and *Moore* involved suppression by police. *Giglio* expressly recognizes that exculpatory information available to the prosecutor – including other attorneys in the office – must be disclosed under *Brady*. *Jackson*, 513 F.3d at 1073.

The U.S. Supreme Court's decision in *Trombetta*, *supra,* 467 U.S. 479 (1984) specifically addressed whether *Brady* imposed any obligation on law enforcement to preserve evidence of unknown exculpatory value (breath samples secured during the administration of breathalyzer tests). Analyzing the issue under *Mooney, Brady, Agurs,* and *Giglio*, the Court held that destruction of evidence of *unknown* exculpatory value did not violate the constitution where authorities had acted in good faith. However, the result would have been different had the evidence possessed apparent exculpatory value and material to the outcome. *Trombetta* at 488, 489 ("Whatever duty the Constitution imposes on the States to

28

preserve evidence, that duty must be limited to evidence that might be expected to play a significant role in the suspect's defense;" "the evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means. Neither of these conditions is met on the facts of this case."). This passage suggests that the Supreme Court considered the preservation of exculpatory evidence known only to law enforcement to be governed by the *Brady-Agurs* line of cases. *Trombetta* makes clear that what triggers the duty to disclose, and thus obviously to preserve (and not conceal), is the exculpatory character of the evidence – not the type of government official who has possession of the information.

### 3. *BRADY ITSELF ESTABLISHES POLICE OFFICERS CONSTITUTIONAL OBLIGATION TO DISCLOSE EXCULPATORY EVIDENCE*

*Brady* itself implicitly, if not explicitly, necessarily proscribes the suppression of exculpatory evidence by not only prosecutors, but any member of the prosecutorial team, including the police. Under *Brady*, an accused is denied a fair trial by the state when material, exculpatory evidence is suppressed. It is self-evident that exculpatory evidence cannot be disclosed to the defense if it is destroyed or suppressed by police before it reaches the prosecutor. Because the causal nexus is so obvious, police officers would not be entitled to qualified

immunity for suppressing exculpatory evidence even if no binding federal authority had specifically explained that police *cause* a *Brady* violation to occur when they prevent exculpatory information from being turned over to the defense.[15] *See Devereaux,* 263 F.3d at 1075 ("a right can be clearly established on the basis of common sense"); *Moldowan v. City of Warren*, 578 F.3d 351, 378 (6th Cir. 2009) ("…the obligations imposed under *Brady* would be largely ineffective if those other members of the prosecution team had no responsibility to inform the prosecutor about [exculpatory] evidence…As a practical matter then, [due process] demands that *Brady*'s protections also extend to actions of other law enforcement officers such as investigating officers.") (internal citations omitted).

Appellants nonetheless maintain that in 1984/1985 reasonable police officers would not have known that they were "bound by" or subject to *Brady* until *Kyles* because the U.S. Supreme Court's *Brady* jurisprudence traditionally focused on the responsibilities of the prosecutor. *See e.g.*, AOB p. 16. This argument is entirely

---

[15] The very language of §1983 makes clear that a basis for liability exists where government officials commit or **cause** a constitutional violation. While the qualified immunity doctrine requires that the right be clearly established, it does not require previous authority explaining obvious ways in which government officials may cause or help cause a violation of that right. The second prong of qualified immunity analysis – whether a right is clearly established – does not address, and is entirely separate from, analysis as to whether the defendant's participation was sufficient to support §1983 liability. Thus, qualified immunity analysis separately considers (1) whether a defendant's conduct violated the plaintiff's constitutional rights, and (2) whether the **right** itself was clearly established. *See e.g.*, *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808 (2009).

30

specious. There was never any question that police officers were "bound by" constitutional rules articulated by the Supreme Court. Appellants fail to identify a single authoritative case for the proposition that *Brady's* proscription against the suppression of material, exculpatory evidence does not apply to police officers. All government officials are subject to constitutional rules, regardless of whether the Supreme Court has given a particular kind of government official special notice that they must obey constitutional guidelines. Accordingly, where a *constitutional right* is clearly established, government officials do not escape liability merely because previous cases focused on violations by a different type of government authority. *Calabretta v. Floyd*, 189 F.3d 808, 813-814 (9th Cir. 1999).

The Ninth Circuit's decision in *Calabretta* addressed warrantless searches of a home during a child abuse investigation. The social workers argued there was no clearly established law despite a binding Ninth Circuit decision holding that police could not conduct warrantless searches in child abuse investigations. According to *Calabretta*, the rule that government officials cannot coerce entry into people's houses without a search warrant (or special exigency) was so well established that any reasonable government official would know it *even if no previous cases addressed the application of the warrant requirement to social workers as opposed to police officers*. The Ninth Circuit emphatically rejected the proposition that social workers were entitle to qualified immunity because previous case law (*White*

31

*v. Pierce County*, 797 F.2d 812, 815 (9th Cir.1986)) spoke "only to police officers, not social workers." That was an "invalid distinction", for

> "everyone knew that the *government* could not so enter houses, and *White* said that principle was well established, in the context of a child abuse investigation. Appellants' argument that they be allowed qualified immunity because *White* did not speak expressly about social workers is of the kind that *Anderson* rejects, "[t]hat is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful...."

189 F.3d at, 813-14 (emphasis added).[16]

Just as there is no social worker exception to the warrant rule, there has never been any police officer exception to *Brady*. Rather, *Brady*'s reasoning envisions application of the rule to the prosecution generally, including the police, as the representatives of the State.[17] *Moldowan v. City of Warren*, 578 F.3d 351,

---

[16] *See also, O'Donnell v. Brown*, 335 F. Supp. 2d 787, 802 (W.D. Mich. 2004); *Walsh v. Erie Cnty. Dep't of Job & Family Servs.,* 240 F. Supp. 2d 731, 746-47 (N.D. Ohio 2003) ("Despite the defendants' exaggerated view of their powers, the Fourth Amendment applies to them, as it does to all other officers and agents of the state whose requests to enter, however benign or well-intentioned, are met by a closed door. There is, the defendants' understanding and assertions to the contrary notwithstanding, no social worker exception to the strictures of the Fourth Amendment."); *State in Interest of A.R.,* 937 P.2d 1037, 1040 (Utah App.1997) ("the Fourth Amendment's prohibition on unreasonable searches and seizures applies whenever an investigator, be it a police officer, a DCFS employee, or any other agent of the state, responds to an alleged instance of child abuse, neglect, or dependency."); *Franks v. Smith,* 717 F.2d 183, 186 (5th Cir.1983) ("A section 1983 action can also lie against others, such as social workers, where actions by them were taken in their official capacity as state employees.").

[17] *Brady* relies on two earlier Supreme Court cases: *Pyle v. Kansas*, 317 U.S. 213 (1942) and *Mooney v. Holohan*, 294 U.S. 103 (1935). In *Pyle*, the Court held that allegations of "the deliberate suppression by [State] authorities of evidence

32

378, 379 (6th Cir. 2009) ( "As far as the Constitution is concerned, a criminal

defendant is equally deprived of his or her due process rights when the police

rather than the prosecutor suppresses exculpatory evidence, because, in either case,

the impact on the fundamental fairness of the defendant's trial is the same.").

> As the Tenth Circuit has held:
>
> [T]he "prosecution" for *Brady* purposes encompasses not only the individual prosecutor handling the case, but also extends to the prosecutor's entire office, *see* [*Giglio v. United States*, 405 U.S. 150, 154 (1972)], as well as law enforcement personnel and other arms of the state involved in investigative aspects of a particular criminal venture. . . . "The duty to produce requested evidence falls on the state; there is no suggestion in *Brady* that different 'arms' of the government are severable entities . . . . 'The duty to disclose is that of the state, which ordinarily acts through the prosecuting attorney.' " *Martinez v. Wainwright*, 621 F.2d 184, 186-87 (5th Cir. 1980) (quoting *Barbee v. Warden, Maryland Penitentiary*, 331 F.2d 842, 846 (4th Cir. 1964)).

*Smith v. Sec'y of New Mexico Dep't of Corr.*, 50 F.3d 801, 824 & n.35 (10th Cir.

1995).

Under this rationale, several circuit courts have expressly held that *Brady*

itself clearly establishes that police officers may not suppress material, exculpatory

---

favorable to [the defendant]" sufficiently state a constitutional deprivation. 317 U.S. at 215-16. Similarly, in *Mooney v. Holohan*, 294 U.S. 103, 112 (1935), the Court held that the use "by a state" of "testimony known to be perjured" is "inconsistent with the rudimentary demands of justice." 294 U.S. at 112. The due process violation in both cases was committed by *the government*, irrespective of the particular governmental actor who suppressed the evidence. As these citations denote, *Brady*'s reference to the "prosecution" serves to encompass all state authorities, including the police, who participate in carrying out a prosecution.

evidence. *Geter v. Fortenberry*, 849 F.2d 1550, 1559 (5th Cir. 1988) (*Brady* establishes that police officers may not conceal exculpatory evidence); *Newsome v. McCabe*, 256 F.3d at 752-53 (7th Cir. 2001) ("The *Brady* principle was announced in 1963, and we applied it in *Jones* to affirm a hefty award of damages against officers who withheld exculpatory information in 1981"); *Steidl v. Fermon*, 494 F.3d 623, 628 (7th Cir. 2007) ("The proposition that it is unconstitutional for law enforcement officers to withhold or suppress exculpatory evidence finds its roots in *Brady* ... [, which] easily qualifies as clearly established law."); *Jones v. City of Chicago*, 856 F.2d 985, 995-96 (7th Cir. 1988) (deliberately concealing records from prosecutors in clandestine files is unlawful attempt to circumvent *Brady*).

These decisions are consistent with *Brady*'s constitutional underpinnings, as the Due Process clause does not differentiate between state actors. *See Mooney v. Holohan*, 294 U.S. 103, 112-13 (1935) ("The action of prosecuting officers on behalf of the state, like that of administrative officers in the execution of its laws, may constitute state action within the purview of the Fourteenth Amendment. That amendment governs any action of a state, 'whether through its legislature, through its courts, or through its executive or administrative officers.'" (citations omitted)). *See also*, *California v. Trombetta*, 467 U.S. 479, 485 (observing in case addressing the obligations of law enforcement, "Under the Due Process Clause of the

34

Fourteenth Amendment, criminal prosecutions must comport with prevailing

notions of fundamental fairness.").

Appellants evidently assume that police suppression of evidence violates a

right that is somehow distinct from the right violated when prosecutors suppress

exculpatory evidence. Contrary to Appellants' position, the non-disclosure of

exculpatory evidence is a <u>singular constitutional violation</u>, regardless of which

government official causes the information to be withheld:.

> "['']Of course, the manner in which prosecutors and police officers comply
> with *Brady* is different, reflecting their different functions in the criminal
> justice system. Police officers do not disclose evidence to criminal
> defendants directly. Instead, the police accumulate evidence and then
> ministerially deliver it to the prosecutor. The prosecutor then makes a
> discretionary legal judgment about whether the evidence is material and
> exculpatory, such that Brady compels its disclosure to the defendant.[' Jean
> v. Collins, 221 F.3d 656, 664 (4th Cir.2000) (Murnaghan, J., dissenting)].
> Although the police and prosecutor play different roles in this process,
> '[t]his functional differentiation ... should not obscure the fact that *Brady*
> creates a *singular constitutional duty*, which prosecutors and police officers
> are capable of breaching in factually different ways.' *Id.*"

*Moldowan v. City of Warren*, 578 F.3d 351, 379 (6th Cir. 2009) (emphasis added);

*see also Fields v. Wharrie*, 672 F.3d 505, 513-514 (7th Cir. 2012) ("Allowing a

police officer to be sued for his role in eventually causing the prosecutor to violate

*Brady* or *Giglio* does not alter the nature of the violation")(internal citations

omitted).

35

### D.  The Ninth Circuit's Decision in *Tennison v. City & County of San Francisco* Supports the Conclusion That The Relevant Constitutional Rule Was Established No Later than 1979 – 1980and as Early as *Brady v. Maryland* (1964)

In *Tennison v. City & County of San Francisco*, 570 F.3d 1078, 1087 (9th Cir. 2009), the Ninth Circuit squarely rejected police officers' assertion of qualified immunity based on the incorrect contention that *Brady* imposed a disclosure duty on prosecutors but not on police officers.[18] The Ninth Circuit concluded that the law regarding police officers' obligations under *Brady* was clearly established before *Tennison*'s 1989 prosecution.[19] As *Tennison* explained:

> "The [police officer defendants'] position also is untenable in light of the Supreme Court's admonition that "*Brady* suppression occurs when the government fails to turn over even evidence that is 'known only to police investigators and not to the prosecutor.' " *Youngblood v. West Virginia,* 547 U.S. 867, 869-70, 126 S.Ct. 2188, 165 L.Ed.2d 269 (2006) (per curiam) (quoting *Kyles v. Whitley,* 514 U.S. 419, 438, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995)); *see also, e.g., Newsome v. McCabe, 256 F.3d 747, 752-53 (7th Cir.2001) (stating that it was clearly established in **1979 and 1980** that police could not withhold exculpatory information about fingerprints and*

---

[18] The murder and investigation at issue in *Tennison* took place in 1989; the plaintiffs were convicted at trial in 1990; they were released in 2003. *Id.* at 1084; *Tennison v. City & County of San Francisco*, No. 04-0574-CW, 2006 WL 733470, at *1-2 (N.D. Cal. Mar. 22, 2006).

[19] Appellants repeatedly assert that the Ninth Circuit did not address this issue until *Tennison* was decided in 2009. See, e.g., AOB, p. 4. The year of the *Tennison* decision is completely immaterial to qualified immunity analysis. The question is not when the first §1983 case addressed qualified immunity, but rather, when federal authority delineated the right. The Court's inquiry looks to whether "the right was 'clearly established' *at the time of the challenged conduct*." *Lane v. Franks,* 13-483, 2014 WL 2765285 (U.S. June 19, 2014) ((slip op., at 3)" (quoting *Ashcroft v. al-Kidd,* 563 U.S. ——, 131 S.Ct. 2074 (2011)) (emphasis supplied).

36

*the conduct of a lineup from prosecutors*). We accordingly reject this argument."

*Tennison*, 570 F.3d at, 1087 (9th Cir. 2009) (emphasis added).

*Tennison* does not state precisely when the law became clearly established, but it strongly suggests that it was clearly established by *Brady* in 1963. <u>*Tennison*</u> specifically cited *Newsome v. McCabe*'s conclusion that the law was clearly established before 1979/1980, *Id. Newsome* explicitly based this conclusion on the fact that *Brady* was decided in 1963, 256 F.3d at 753, which indicates that, *Newsome* determined that *Brady* itself clearly established that police suppression of exculpatory evidence violates due process. Considering *Tennison*'s reference to *Newsome*, *Tennison* establishes that, in this Circuit, the police obligation to disclose exculpatory evidence was established at least by 1979-80, if not by 1963. Of necessity, *Tennison* stands for the proposition that the law was clearly established prior to the U.S. Supreme Court's 1995 decision in *Kyles* and therefore was established by decisions predating *Kyles* (which logically means by *Brady* or *Giglio*). *Tennison* could not have denied qualified immunity to police officers accused of suppressing evidence in 1989/1990 if the law was only clearly established by *Kyles*.

37

### E. Most Circuits to Have Examined the Issue Concur that by 1984/1985 It Was Cleary Established That Police Officers' Suppression of Material, Exculpatory Evidence Violates *Brady*

Appellants erroneously claim that "numerous courts from the other Circuits specifically held that the law was not clearly established on this issue until [*Kyles*]." Even if Appellants were correct, a lack of consensus among other circuits in 1984/1985 would be irrelevant because the law was clearly established in the Ninth Circuit by *Butler*. In light of *Butler*, it is not necessary to determine whether a consensus of cases of persuasive authority existed.

For qualified immunity purposes, the relevant inquiry for determining clearly established law is whether there exists "controlling authority in [his] jurisdiction" or*, if not*, whether there exists a "consensus of cases of persuasive authority" from other jurisdictions. *See Wilson v. Layne*, 526 U.S. 603, 617 (1999). *Rivero v. San Francisco*, 316 F.3d 857, 865 (9th Cir. 2002) ("The issue is not what the law was or might have been in other circuits in [the relevant year]. It is, rather, what the 'controlling authority in [the defendants'] jurisdiction [was] at the time of the incident.'") (quoting *Wilson v. Layne*, 526 U.S. 603, 617 (1999)). Because *Butler* decided in 1978 that a due process violation occurs where evidence from police files is suppressed, it is not necessary to determine whether a consensus of cases of persuasive authority existed. "If the right is clearly established by decisional authority by the Supreme Court or the Ninth Circuit, the inquiry comes

38

to an end." *Hopkins v. Boncicino*, 573 F3d 752, 772 (9th Cir. 2009) (citing

*ActUp!/Portland v. Bagley*, 988 F.2d 868, 871 – 872 (9th Cir. 1993); *see also, e.g.*,

*Boyd v. Benton County,* 374 F.3d 773, 781 (9th Cir.2004) ("In the Ninth Circuit,

we begin our inquiry by looking to binding precedent. If the right is clearly

established by decisional authority of the Supreme Court or this Circuit, our

inquiry should come to an end.") (citations omitted) (quoted in *Hopkins v.*

*Bonvicino*, 573 F.3d 752, 772 (9th Cir. 2009)).[20] Thus, *Butler* is dispositive even if

other circuits issue directly conflicting opinions.[21]

    Appellants' characterization of the legal landscape is incorrect. The vast

majority of circuits to address the issue have held that it was clearly established

long before 1984/1985 that *Brady* prohibits police officers from suppressing

material exculpatory evidence. *Geter v. Fortenberry*, 849 F.2d 1550, 1559 (5th Cir.

1988) (police officer's deliberate concealment of exculpatory evidence violates

constitutional principles clearly established by *Brady* (**1963**))*; McMillian v.*

_____

[20] Even if a circuit split had existed in 1984/1985, which was later resolved by the
Supreme Court in Plaintiff's favor in *Kyles*, it is of no consequence. The case
would be in exactly the same posture as *Rivero*, where the Ninth Circuit held that
the relevant legal principle was clearly established in the Ninth Circuit in 1993
even though a circuit split existed at the time, which was later resolved by the
Supreme Court in 1996. *Rivero*, 316 F.3d at 865 ("[T]he fact that there was a
circuit split does not mean that the law was not clear in this Circuit prior to the
[Supreme] Court's decision.")
[21] The Supreme Court reiterated this fundamental principle this term. *See Lane v.*
*Franks*, 13-483, 2014 WL 2765285 (U.S. June 19, 2014), slip opinion at pg. 3.

*Johnson*, 88 F.3d 1554, 1569, *amended on other grounds on reh'g*, 101 F.3d 1363 (11th Cir. 1996) (police officer's concealment of exculpatory or impeachment evidence violates constitutional rights clearly established by, *inter alia*, *Freeman v. State of Georgia*, 599 F.2d 65, 69, *cert. denied*, 444 U.S. 1013 (**1980**)); *Goodwin v. Metts*, 885 F.2d 157, 162 (4th Cir. 1989), ("A police officer [in **1983**] who withholds exculpatory information from the prosecutor can be liable under . . . section 1983..."); *overruled in part by Albright v. Oliver*, 510 U.S. 266 (1994); *see also Walker v. City of New York*, 974 F.2d 293, 299 (2d Cir. 1992) (citing 1970s and 1980s cases for proposition that police, as well as prosecutors, have *Brady* obligations ).

Though Appellants insist that various circuits have held the constitutional right was not established until *Kyles* (1994), only <u>one</u> known circuit case supports Defendant's position that, at the time of the events in this case, it was not clearly established that a police officer's suppression of material, exculpatory evidence violates the constitution: *Gibson v. Superintendent of N.J. Dept. of Law & Pub. Safety-Div. of State Police*, 411 F.3d 427, 443-44 (3d Cir. 2005), *overruled on other grounds by Dique v. N.J. State Police*, 603 F.3d 181, 183 (3d Cir. 2010) (holding that the defendant police officers' duty to disclose material, exculpatory

40

evidence was not clearly established within the Third Circuit in 1994).[22] And

*Gibson* itself recognized that, if there had been clear Third Circuit precedent (as

there is here for the Ninth Circuit), the result would have been different. 411 F.3d

at 444 ("Because such a right *was not clearly established in this Circuit at the time*

*of Gibson's conviction*, Troopers Pennypacker and Reilly are entitled to qualified

immunity with regard to their failure to inform the prosecutor of *Brady* material")

(emphasis supplied).

Beyond *Gibson*, Appellants cite various cases from the Fourth and Sixth

Circuits. AOB pp. 37 – 43. These cases are inapposite and/or do not stand for the

proposition for which they are cited.[23] Appellants entirely mischaracterize the 6th

---

[22] Appellants also cite a District of Puerto Rico case. AOB at 41-42 (citing *Moreta-Ramirez v. Lemert*, 156 F. Supp. 2d 138 (D.P.R. 2001)). Regardless of the district court's flawed analysis in *Moreta-Ramirez*, which was conducted under the heading "Fourth Amendment," the plaintiff did not present a traditional *Brady* claim because charges were dismissed before trial, and thus there was not a deprivation of a fair trial.

[23] At AOB pp. 37, 38, Appellants cite to the concurring opinion in *Jean v. Collins*, 221 F.3d 656 (4th Cir. 2000) (en banc), which is not controlling authority even within the Fourth Circuit because the court was divided evenly. Further, the *Jean* concurrence does not disturb *Goodwin v. Metts*, a pre-*Kyles* Fourth Circuit case, holding that "[a] police officer who withholds exculpatory information from the prosecutor can be liable under . . . section 1983." *Jean*, 221 F.3d at 659 (Wilkinson, C.J., concurring in judgment) (quoting *Goodwin v. Metts*, 885 F.2d 157, 162 (4th Cir.1989), *overruled in part on other grounds by*, *Albright v. Oliver*, 510 U.S. 266 (1994)).

Appellants also cite *Taylor v. Waters*, 81 F.3d 429 (4th Cir. 1996). AOB pp. 38, 39. Like *Jean*, *Taylor* does not disturb the relevant holding of *Goodwin v. Metts*, 885 F.2d 157 (4th Cir. 1989). *See Taylor*, 81 F.3d at 436 n.5 (confirming the

Circuit's decision in *Moldowan*. In *Moldowan*, the Sixth Circuit did not hold that the right to be free from conviction on the basis of evidence suppressed by police was clearly established in 1999. Rather, it determined that the right was clearly established by the earliest date of the officer's involvement in the investigation, 1990. Significantly, *Moldowan* cited to three cases that determined the right was clearly established prior to 1984/1985 (*Barbee*, 1964, *Geter*,1963, and *Jones*, 1981).

Appellants' claim that this issue "is in flux even today" (AOB, p. 5). This is a serious misrepresentation of the state of the law. Gibson itself recognized that the Plaintiff had "state[d] an actionable claim," 411 F.3d at 443, thereby recognizing that, in the future at least, qualified immunity would not be available. *See, e.g., Nanton v. Mecka*, 2:11-CV-6132 JAD, 2013 WL 1844756 (D.N.J. Apr. 30, 2013) ("the Third Circuit joined numerous other circuits in recognizing" that police suppression of exculpatory evidence is actionable). *See also Tiscareno v. Anderson*, 639 F.3d 1016, 1023, *opinion vacated in non-pertinent part on reh'g*, 421 F. App'x 842 (10th Cir. 2011) ("Nearly all of our sister circuits have also

---

continued validity of *Goodwin*, "to the extent that *Goodwin* ruled that the officer's failure to disclose the exculpatory information deprived the §1983 plaintiffs of their right to a fair trial," and citing *Brady* (1963) as support for *Goodwin*'s continued viability). *Taylor* granted qualified immunity because the plaintiff's criminal case was dismissed before trial, and therefore he was not denied his due process right to a fair trial as a result of the suppressed evidence. *Id.* at 435-36. *Taylor* is inapplicable here.

42

determined that police may be liable under §1983 for failure to turn over *Brady* evidence."); *Moldowan v. City of Warren*, 578 F.3d 351, 381 (6th Cir. 2009) ("virtually every other circuit has concluded either that the police share in the state's obligations under *Brady*, or that the Constitution imposes on the police obligations analogous to those recognized in *Brady*" and collecting cases).

## VIII. CONCLUSION

For the foregoing reasons, Appellees respectfully request that the Court affirm the district court's denial of qualified immunity and remand the case for trial forthwith. In light of *Brady* and its pre-1985 progeny, only a police officer who was "plainly incompetent" or "knowingly violat[ing] the law" would have thought that it was constitutionally acceptable to suppress material, exculpatory information, as occurred in this case. Defendant is fighting a battle that was lost long ago.

Respectfully submitted,

KAYE, McLANE, BEDNARSKI & LITT, LLP

DATED: June 30, 2014 _____/s/_ Barrett S. Litt
Attorney for Plaintiffs-Appellees Frank and Nicholas O'Connell

43

CERTIFICATE OF RELATED CASES

Pursuant to Circuit Rule 28-2.6, counsel for [appellant/appellee] certifies that he is unaware of any pending related cases or cases presenting an issue related to those in this brief.

DATED: June 30, 2014

/s/   Barrett S. Litt
_____
Barrett S. Litt
Attorney for Plaintiffs-Appellees Frank
and Nicholas O'Connell

44

CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C), I certify that this brief is proportionally spaced, has a roman style typeface of 14 points or more, and contains 11, 056 words, including the parts of the brief required by and excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

DATED: June 30, 2014　　　　　　　　/s/　Barrett S. Litt
                                                          _____
                                                          Barrett S. Litt
                                                          Attorney for Plaintiffs-Appellees Frank
                                                          and Nicholas O'Connell