No. 13-56817

# UNITED STATES COURT OF APPEALS

# FOR THE NINTH CIRCUIT
_____

FRANK O'CONNELL, et al.,

Plaintiffs/Appellees

vs.

J.D. SMITH, et al.,

Defendants/Appellants.
_____

Appeal from the United States District Court
for the Central District of California
Honorable Michael W. Fitzgerald
U.S.D.C. No. CV 13-01905 MWF (PJWx)
_____

# APPELLANTS' REPLY BRIEF
_____

PAUL B. BEACH, STATE BAR NO. 166265
MICHAEL D. ALLEN, STATE BAR NO. 198126
GEORGE E. MORRIS JR., STATE BAR NO. 281062
LAWRENCE BEACH ALLEN & CHOI, PC
100 West Broadway, Suite 1200
Glendale, CA 91210-1219
(818) 545-1925

Attorneys for Defendants/Appellants
J.D. SMITH and ERIC PARRA

No. 13-56817

# UNITED STATES COURT OF APPEALS

# FOR THE NINTH CIRCUIT
———————————————————

FRANK O'CONNELL, et al.,

Plaintiffs/Appellees

vs.

J.D. SMITH, et al.,

Defendants/Appellants.
———————————————————

Appeal from the United States District Court
for the Central District of California
Honorable Michael W. Fitzgerald
U.S.D.C. No. CV 13-01905 MWF (PJWx)
———————————————————

# APPELLANTS' REPLY BRIEF
———————————————————

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ................................................................. 1

II.  PLAINTIFFS MISCONSTRUE THE ISSUE ON APPEAL BY
     DEFINING IT GENERALLY AND NOT IN A
     PARTICULARIZED SENSE AS THE UNITED STATES
     SUPREME COURT HAS REQUIRED IN APPLYING THE
     "CLEARLY ESTABLISHED LAW" PRONG OF
     QUALIFIED IMMUNITY .................................................... 3

III. PLAINTIFFS FAIL TO SHOW THAT IT WAS CLEARLY
     ESTABLISHED IN THE NINTH CIRCUIT IN 1984 THAT
     POLICE OFFICERS HAD THE SAME BRADY
     OBLIGATIONS THAT PROSECUTORS HAD .............................. 7

     A.  Plaintiffs' Reliance on *Jackson v. Brown* Is Misplaced
         Because It Emphasized That, Under *Brady*, It Is the
         *Prosecutor* (Not the Police Officer) Who "Bears
         Responsibility" For Any Information Uncovered by the
         Police That is Not Ultimately Turned Over to the
         Defense ................................................................. 7

     B.  Plaintiffs' Arguments Fail to Demonstrate that the
         Dictum in *Butler* Clearly Established That Police
         Officers Had a Personal Responsibility to Carry Out a
         Prosecutor's *Brady* Obligations .............................. 13

IV.  PLAINTIFFS MISCHARACTERIZE THE PURPORTED
     CONSENSUS AMONG OTHER COURTS REGARDING
     THE CLEARLY ESTABLISHED NATURE OF THIS ISSUE ....... 15

     A.  Based on a Recent California State Court Decision
         Published After the Opening Brief in the Instant Case, It
         Is Apparent That There is Still a Split Between This
         Circuit and California State Courts On Who is Ultimately
         Responsible For a Purported *Brady* Violation Which
         Further Indicates That Lack of Clearly Established Law
         on This Issue ......................................................... 17

     B.  The Numerous Out-of-Circuit Cases Identifying the Lack
         of Consensus on this Issue Only Further Support that the
         Law Was Not Clearly Established in 1984 and Is in Flux
         To This Day ........................................................... 21

V.   PLAINTIFFS' ARGUMENT THAT POLICE OFFICERS
     HAVE ALWAYS BEEN BOUND BY BRADY DOES NOT
     WITHSTAND EVEN MINIMAL SCRUTINY ........................... 27

VI.  CONCLUSION .............................................................. 30

CERTIFICATE OF COMPLIANCE.............................................................. 31

CERTIFICATE OF SERVICE ................................................................. 32

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Albright v. Oliver*,
510 U.S. 266 (1994) .................................................................. 22

*Anderson v. Creighton*,
483 U.S. 635 (1987) .................................................................. 6

*Ashcroft v. al-Kidd*,
563 U.S. __, 131 S. Ct. 2074 (2011) .................................... 4, 12

*Bilbrey v. Brown*,
738 F.2d 1462 (9th Cir. 1984) ........................................... 3

*Boyd v. Benton Cnty.*,
374 F.3d 773 (9th Cir. 2004) ................................................. 15

*Brady v. Maryland*,
373 U.S. 83 (1963) .................................................................. 4

*Brosseau v. Haugen*,
543 U.S. 194(2004) ................................................................ 13

*Capoeman v. Reed*,
754 F.2d 1512 (9th Cir. 1985) ............................................... 16

*Carter v. Burch*,
34 F.3d 257 (4th Cir. 1994) .................................................... 10

*Cetacean Cmty. v. Bush*,
386 F.3d 1169 (9th Cir. 2004) ............................................... 14

*Dunn v. Castro*,
621 F.3d 1196 (9th Cir. 2010) ........................................... 4, 11

*Engstrom v. Superior Court*,
20 Cal.App.3d 240 (1971) ................................................. 19, 20

*Gibson v. Superintendent of NJ Dept. of Law & Pub. Safety-Div. of State Police*,
411 F.3d 427(3rd. Cir. 2005), .............................................. 5

*Giglio v. United States*,
405 U.S. 150 (1972) ................................................ 5, 8, 11, 29

iii

*Goodwin v. Metts,*
   885 F.2d 157 (4th Cir. 1989) ................................................................ 22

*Haley v. City of Boston,*
   657 F.3d 39 (1st Cir. 2011) ............................................................. 5, 28

*In re Ferguson,*
   5 Cal.3d 525 (1971) ........................................................................... 19

*In re Gary G.,*
   115 Cal.App.3d 629 (1981) ............................................................... 20

*Jackson v. Brown,*
   513 F.3d 1057 (9th Cir. 2008) ........................................................ 7, 8

*Jean v. Collins,*
   221 F.3d 656 ............................................................... 22, 23, 24, 25

*Kyles v. Whitley,*
   514 U.S. 419 (1995) ...................................................... 4, 27, 29

*Lane v. Franks,*
   134 S. Ct. 2369 (June 19, 2014) ..................................................... 23

*Lee v. City of Los Angeles,*
   250 F.3d 668 (9th Cir. 2001) ........................................................... 10

*Lum v. Jensen,*
   876 F.2d 1385 (9th Cir. 1989) ......................................................... 15

*Lynn v. Tarney,*
   405 Fed.Appx. 753, 2010 WL 5394849 (4th Cir. 2010) ...................... 22

*McCaffrey v. City of New York,*
   2013 WL 494025 (S.D.N.Y. 2013) ................................................... 26

*Moldowan v. City of Warren,*
   578 F.3d 351 (6th Cir. 2009) ..................................................... 25, 26

*Moore v. Illinois,*
   408 U.S. 786 (1972) .......................................................................... 5

*Moreta-Ramirez v. Lemert,*
   156 F.Supp.2d 138 (D. Puerto Rico 2001) ....................................... 26

*People v. Davis,*
   226 Cal.App.4th 1353 (2014) ..................................................... 17, 18

*People v. Shaparnis,*
   147 Cal.App.3d 190 (1983) .............................................................. 20

*Reid v. Simmons,*
   163 F. Supp. 2d 81 (D.N.H. 2001) ................................................... 26

*Teague v. Lane,*
    489 U.S. 288 (1989) ............................................................ 8

*Tennison v. City & County of San Francisco,*
    570 F.3d 1078 (9th Cir. 2009) ......................................... 7

*U.S. v. So. Cal. Edison Co.,*
    300 F.Supp.2d 964 (E.D.Cal.2004) ............................... 10

*United States v. Agurs,*
    427 U.S. 97 (1976) .................................................... 5, 29

*United States v. Bagley,*
    473 U.S. 667 ............................................................. 5, 29

*United States v. Butler,*
    567 F.2d 885 (9th Cir. 1978) ...................................... 7, 13

*United States v. Sine,*
    493 F.3d 1021 (9th Cir. 2007) ........................................ 10

*Wade v. Brady,*
    460 F.Supp.2d 226 (D. Mass. 2006) ................................ 29

*Walker v. City of New York,*
    974 F.2d 293 (2nd Cir. 1992) ......................................... 22

*Williams v. Taylor,*
    529 U.S. 362 (2000) ........................................................ 9

*Wilson v. Layne,*
    526 U.S. 603 (1999) ........................................ 12, 16, 25, 27

*Wood v. Strickland,*
    420 U.S. 308 (1975) ................................................... 3, 15

## ARGUMENT

## I.     INTRODUCTION.

Plaintiffs' arguments mischaracterize the issue in this appeal by conflating the responsibilities imposed on prosecutors by *Brady* with an independent duty of police officers that was non-existent at the time of the alleged conduct in the instant case.  Plaintiffs have not and cannot show that such an independent duty was so sufficiently "beyond debate" in 1984 as to clearly establish the law at the time of the underlying investigation in this case.

Contrary to Plaintiffs' arguments, the first time this Circuit heldthat police officers had an independent duty to carry out the obligations (previously held to only apply to prosecutors) under *Brady* was in the 2009 *Tennison* decision.  The single sentence of dictum in *Butler* that Plaintiffs misconstrue simply noted that the prosecutor's responsibilities under *Brady* extended to information in the possession of law enforcement agencies, but emphasized that it was the **prosecutor's** duty.  The *Butler* dictum said nothing about an independent duty of disclosure applicable to police officers.

As explained in Appellants' Opening Brief, the circuit split on this issue has recognized the distinction between the prosecutor's duty under

*Brady* and whether that extends to an independent obligation for police officers. Indeed, courts have identified various compelling reasons for the importance of the distinction that the disclosure duty under *Brady* ultimately is the responsibility of the prosecutor: (1) imposing an independent duty on law enforcement would expand the legal gulf between prosecutors (who enjoy absolute immunity in the exercise of their prosecutorial duties, including disclosure of *Brady* material) and police officers and expose police to a multitude of litigation for alleged nondisclosures even when prosecutors are absolutely immune; (2) defendants' remedy for *Brady* violations is to have their convictions overturned, and to subject police officers to § 1983 suits for nondisclosures that are ultimately placed on the prosecution would set up continual finger-pointing between prosecutors and police for whose fault it was for the nondisclosure; and (3) because prosecutors are charged with being educated and well-versed in the law, they are in a better position to make the legal determinations on whether information qualifies for disclosure under *Brady*.

As further explained below, the issues over responsibility for nondisclosure of information under *Brady* and whether it extended to an independent obligation of police officers or ultimately rested with the prosecution were in considerable dispute at the time of the underlying

investigation in this case in 1984 — and various courts to this very day are still debating the issue. Qualified immunity protects officials from civil liability for failure to predict the future course of the law. *See, Bilbrey by Bilbrey v. Brown*, 738 F.2d 1462, 1465 (9th Cir. 1984) ("government officials are **not required to predict the future course of constitutional law**.") (emphasis added) (quoting *Wood v. Strickland*, 420 U.S. 308, 322 (1975)). Since the law was not clearly established in 1984 to what extent, if any, the requirements of the United States Supreme Court *Brady* decision imposed an independent obligation on police officers, Appellants J.D. Smith and Eric Parra respectfully request that the District Court's decision to deny qualified immunity to them (solely limited to Plaintiffs' "*Brady*" claims) be reversed.

II.  **PLAINTIFFS MISCONSTRUE THE ISSUE ON APPEAL BY DEFINING IT GENERALLY AND NOT IN A PARTICULARIZED SENSE AS THE UNITED STATES SUPREME COURT HAS REQUIRED IN APPLYING THE "CLEARLY ESTABLISHED LAW" PRONG OF QUALIFIED IMMUNITY.**

The United States Supreme Court "has repeatedly told courts . . . not to define clearly established law at a high level of generality." *Ashcroft v.*

*al-Kidd*, 563 U.S. __, 131 S. Ct. 2074, 2084 (2011); *see also*, *Dunn v. Castro*, 621 F.3d 1196, 1201 (9th Cir. 2010) ("[T]he right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established.")  Rather than properly address the issue in terms of whether there was clearly established law in 1984 putting the onus of *Brady* obligations directly on police officers, Plaintiffs discuss the issue more generally by misconstruing several cases discussing the scope of a **prosecutor's** responsibility under *Brady*.  (Answering Brief ["AB"] at p. 9.)  However, nothing in the Supreme Court's decision in *Brady* or any other case prior to the underlying criminal investigation imposed a duty on police officers to disclose exculpatory evidence.

By its express language, *Brady* itself identifies the issue as "suppression by the prosecution" and imposes the duty to the prosecutor. *Brady v. Maryland*, 373 U.S. 83, 86-88 (1963) ("nondisclosure by a **prosecutor** violates due process"; "A prosecution that withholds evidence . . . casts the **prosecutor** in the role of an architect of a proceeding that does not comport with standards of justice") (emphasis added).

As explained in the Appellants' Opening Brief, the extent to which *Brady* obligations, if any, extended to police officers was not clarified by the United States Supreme Court until its 1995 decision in *Kyles v. Whitley*, 514

U.S. 419 (1995). (Appellants' Opening Brief ["AOB"] at pp. 20-26.)

Throughout the thirty-two years between *Brady* and *Kyles*, the Supreme

Court had consistently defined the *Brady* duty as one resting on the

prosecutor. *See*, *e.g.*, *Giglio v. United States,* 405 U.S. 150, 154 (1972)

(*Brady* disclosure "is the responsibility of the prosecutor"); *Moore v.

Illinois,* 408 U.S. 786, 794 (1972) ("The heart of the holding in *Brady* is the

prosecution's suppression of evidence"); *United States v. Agurs,* 427 U.S.

97, 108 (1976) ("prosecutor's constitutional duty to disclose"); *United States

v. Bagley,* 473 U.S. 667, 676 (failure of "the prosecutor" to disclose).

Moreover, multiple courts have concluded that this issue was not

made clear until the 1995 Supreme Court decision in *Kyles*. *See*, *e.g.*, *Haley

v. City of Boston*, 657 F.3d 39, 48-49 (1st Cir. 2011) ("The [Supreme Court]

did not clarify that the *Brady* duty imposed on prosecutors bore any relation

to disclosure by police officers until [1995]. Even then, the described

relationship was indirect."); *Gibson v. Superintendent of NJ Dept. of Law &

Pub. Safety-Div. of State Police*, 411 F.3d 427, 433 (3rd. Cir. 2005),

*overruled on other grounds by Dique v. New Jersey State Police*, 603 F.3d

181, 183 (3rd Cir. 2010) (police offers entitled to qualified immunity "with

regard to their failure to inform the prosecutor of *Brady* material" since "the

Supreme Court did not settle this matter until 1995 when it decided *Kyles*").

The Supreme Court has advised that the operation of the "clearly established" standard for qualified immunity "depends substantially upon the level of generality at which the relevant 'legal rule' is to be identified." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987). Indeed, the importance of defining the issue at the appropriate level avoids situations where plaintiffs "would be able to convert the rule of qualified immunity that our cases plainly establish into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." *Id*. Plaintiffs' broad definition of the issue, however, does exactly that. As further explained below, by incorrectly defining the issue, Plaintiffs' argument is permeated by misinterpretations of the relevant case law.

Contrary to Plaintiffs' view, the particularized right at issue in this appeal is whether, prior to the 1984 criminal investigation, **police officers** had the same duties and obligations as prosecutors to disclose potentially exculpatory evidence under *Brady* in 1984. As extensively explained in the AOB, the lack of clear authority in the Supreme Court and this Circuit by 1984, combined with the circuit split among courts today as well as the continuing split between this Circuit and California state court decisions, demonstrates that this question was not clearly established in 1984 (and is still not clearly established to this very day).

**III. PLAINTIFFS FAIL TO SHOW THAT IT WAS CLEARLY ESTABLISHED IN THE NINTH CIRCUIT IN 1984 THAT POLICE OFFICERS HAD THE SAME *BRADY* OBLIGATIONS THAT PROSECUTORS HAD.**

> **A. Plaintiffs' Reliance on *Jackson* Is Misplaced Because It Emphasized That, Under *Brady*, It Is the *Prosecutor* (Not the Police Officer) Who "Bears Responsibility" For Any Information Uncovered by the Police That is Not Ultimately Turned Over to the Defense.**

Plaintiffs' citation to this Circuit's recent 2008 decision in *Jackson v. Brown*, 513 F.3d 1057 (9th Cir. 2008) adds nothing to the qualified immunity analysis regarding the lack of clarity in the law **in 1984**, and suffers from the same distinguishable defects as in *United States v. Butler*, 567 F.2d 885 (9th Cir. 1978) and *Tennison v. City & County of San Francisco,* 570 F.3d 1078 (9th Cir. 2009).

First, contrary to Plaintiffs' assertions, nowhere in *Jackson* did this Court ever state that police officers (unlike prosecutors) carry the responsibilities set forth by *Brady*. In fact, *Jackson* held the opposite and emphasized that, if a police officer does not turn over exculpatory evidence, it is the **prosecutor** (not the individual police officer) who bears the

7

responsibility for that. Specifically, *Jackson* stated:

> "[W]hether the nondisclosure was a result of negligence or design, **it is the responsibility of the prosecutor**. The prosecutor's office is an entity and as such it is the spokesman for the Government. A promise made by one attorney must be attributed, for these purposes, to the Government." *Id.* at 154, 92 S.Ct. 763 (citing Restatement (Second) of Agency § 272). *Giglio*'s **focus on the responsibility of the prosecutor to investigate all promises made on behalf of the government extends to promises made by the police, who also make any such promises as spokespersons for the government, and for whom the prosecutor bears responsibility**.

*Jackson*, *supra,* 513 F.3d at 1073-74 (emphasis added).

Moreover, unlike the instant case, *Jackson* did not analyze the issue in the context of "clearly established" law for qualified immunity. Specifically, *Jackson* dealt with a *habeas* petition as to whether the **prosecutors** committed a *Brady* violation in 1981 by not disclosing promises to informants made by law enforcement. *Jackson, supra*, 513 F.3d at 1072. Finding that the Supreme Court's 1995 decision in *Kyles* established the rule, the court then applied the retroactivity framework announced in *Teague v. Lane*, 489 U.S. 288 (1989) to determine if "the Constitution, as interpreted by then precedent then existing, compel[led] the rule" at the time of the violation or whether it was a "new constitutional rule of criminal procedure." *Id*. at 1072-1073.

Despite Plaintiffs' assertions, the determination in a *habeas* case

under the *Teague* framework of whether existing precedent compels a rule is different than a determination under qualified immunity as to whether the law was "clearly established" in a particularized sense. *See*, *Williams v. Taylor*, 529 U.S. 362, 380 n. 12 (2000) (rejecting the argument that Congress's use of "clearly established law" in a *habeas* statute meant to apply qualified immunity analysis rather than *Teague's* "new rule" analysis: "the verbatim adoption of the *Teague* language in other sections bolsters our impression that Congress had *Teague*—and not any **unrelated area** of our jurisprudence—specifically in mind. . . . We will not assume that . . . Congress made the anomalous choice of reaching into the **doctrinally distinct law of qualified immunity** . . .") (emphasis added).

Even though the "new rule" analysis conducted in *Jackson* is distinct from "clearly established law" analysis under qualified immunity, as set forth above, *Jackson* still emphasized that *Brady* imposes the responsibility (of disclosure) on the **prosecutor**, not that of the police officer. In fact, *Jackson's* citation to *Butler* was to re-emphasize that principle: "The prosecutor is responsible for the nondisclosure of assurances made to his principal witnesses even if such promises by other government agents were unknown to the prosecutor." *Id*. at 1074. By arguing that *Jackson* demonstrates that the law was "clearly established" that *Brady* imposes the

responsibility for disclosure on **police officers**, Plaintiffs still conflate the issue of a prosecutor's duty under *Brady* with that of a police officer's.

In addition to the fact that neither *Jackson* nor *Butler* held that police officers bore the responsibility of carrying out the requirements under *Brady*, even if they had, neither of these cases involved the same "particularized" right as in the instant case so that it would be "apparent" and "beyond debate" at the time of the alleged conduct. *Jackson* and *Butler* both involved nondisclosure of promises to witnesses, which is significantly different than, as Plaintiffs allege, nondisclosure of the identification of Plaintiff as the shooter and the possibility of another suspect.[1] This is further emphasized

---

[1] Plaintiffs improperly attempt to rely upon the findings in the 3/29/2012 Superior Court *habeas* order by including them in their "statement of facts." However, the Superior Court's findings are inadmissible in this case and Plaintiffs' reliance on the order for the facts is not properly the subject of judicial notice. *See*, *Lee v. City of Los Angeles,* 250 F.3d 668, 690 (9th Cir. 2001) (permitting a court to take judicial notice of another court's opinion, but not the truth of the facts recited therein); *U.S. v. So. Cal. Edison Co.,* 300 F.Supp.2d 964, 973 (E.D.Cal.2004) ("a court **cannot** take judicial notice of another court's determination of the truth of disputed facts"; "a court can only take judicial notice of the **existence** of those matters of public record ... but not the **veracity** of the arguments and disputed facts contained therein.") (emphasis in original); *United States v. Sine*, 493 F.3d 1021, 1036 (9th Cir. 2007) ("A court judgment is hearsay to the extent that it is offered to prove the truth of the matters asserted in the judgment."); *Carter v. Burch*, 34 F.3d 257, 265 (4th Cir. 1994) (excluding a state court judge's habeas order in the subsequent federal civil rights action because the report was inadmissible hearsay and because its probative value was substantially outweighed by the danger of unfair prejudice).

by *Jackson's* reliance on *Giglio v. United States*, 405 U.S. 150 (1972), a case

which also involved nondisclosure of promises to witnesses.[2]

Furthermore, as set forth in the AOB (pp. 32-34), not only did the

2009 decision in *Tennison* glaringly omit *Butler* from its determination

whether the law was clearly established regarding *Brady* obligations and

police officers, *Tennison* made no reference to *Jackson* either. This further

indicates that *Jackson*, which was decided only a year prior to *Tennison*,

does not stand for the proposition that *Butler* (or any other cases in this

---

Furthermore, while Plaintiffs' "statement of facts" attempts to argue that the height of the other suspect, Randy Smith, is unimportant (AB at p.9 n.7), Plaintiffs fail to disclose Smith was determined a dead lead because he also did not match witnesses' descriptions of the shooter as having no facial hair (Smith had a full beard at the time) and that Plaintiff's criminal defense counsel was aware of and investigated Smith prior to trial. Regarding Plaintiffs' statements regarding an "anonymous tip" that a contract killer was hired (AB at p.4 n.4), Plaintiffs conveniently omit that the lead was investigated and also determined a dead lead because the alleged "hit man" was too old to be the shooter, had no criminal history, and the supposed "matching" car was not similar to the getaway vehicle and in fact registered to someone else.

[2] Plaintiffs' argument that it does not matter whether the specific nondisclosures in *Butler* (and now *Jackson*) are different than the alleged nondisclosures here because both fall under the scope of a *Brady* violation again fails to apply the "particularized" standard that must be considered on qualified immunity determinations. *See*, *Dunn v. Castro, supra*, 621 F.3d at 1201 ("[T]he right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established.")

Circuit) clearly established the law on this issue in 1984.[3]

Accordingly, *Jackson's* broad ruling, in a different context from the instant case, does not suffice to place the question "beyond debate" for purposes of qualified immunity. *See*, *Ashcroft v. al-Kidd*, *supra*, 131 S. Ct. at 2083 ("existing precedent must have placed the statutory or constitutional question beyond debate.")

Finally, *Jackson* was decided in 2008, and therefore like *Tennison* in 2009,[4] reasonable officers in Detectives Smith and Parra's position **in 1984** would have been unable to rely on the *Jackson* decision even if it had held that police officers could be liable for alleged *"Brady"* violations. *See*, *Wilson v. Layne*, 526 U.S. 603, 614 (1999) (qualified immunity is "assessed

---

[3] As identified in the AOB (p.34 n.14), even Plaintiffs failed to emphasize the asserted importance of *Butler* prior to the District Court's decision in this case by burying *Butler* in their opposition papers. Now, Plaintiffs assert the importance of *Jackson*, but, tellingly, **Plaintiffs did not even cite to *Jackson*** in any of their opposition papers below. (*See*, 2 AER 61-93.)

[4] Plaintiffs argue that *Tennison* suggests that the law was clearly established by *Brady* in 1963; however, as explained in the AOB (pp. 44-46), the 2001 out-of-circuit *Newsome* case cited in *Tennison* and highlighted by Plaintiffs certainly did not represent a consensus opinion in 1984. Multiple courts from other circuits had held that *Brady*'s obligations had not applied to police officers in 1984, including a Fourth Circuit decision released only a year prior to *Newsome* that noted the uncertainty of the law in 1982 and could not come to a consensus on the issue. *See*, *Jean v. Collins*, 221 F.3d 656 (4th Cir. 2000) (en banc). Moreover, the Detectives would not have had the benefit of any of these cases during the relevant time period in 1984, since they were all decided 15-25 years afterwards.

in light of the legal rules that were 'clearly established' at the time [of the alleged unlawful action].")  Plaintiffs fail to cite, and cannot cite, any single case from this Circuit **prior to the relevant criminal investigation in 1984** that relied upon *Butler* (or *Jackson*) for a holding that police officers were personally responsible for the *Brady* obligations imposed on prosecutors. Therefore, just like *Tennison*, it is impossible for *Jackson* to clearly establish the law regarding this issue in 1984.  *See*, *Brosseau v. Haugen,* 543 U.S. 194, 200 n.4 (2004) *(per curiam)* (explaining that cases which "postdate the conduct in question . . . of course, could not have given fair notice to [the government official] and are of no use in the clearly established inquiry").

B.  <u>**Plaintiffs' Arguments Fail to Demonstrate that the Dictum in *Butler* Clearly Established That Police Officers Had a Personal Responsibility to Carry Out a Prosecutor's *Brady* Obligations.**</u>

Plaintiffs' arguments in support of the single sentence in *Butler* are entirely unavailing and do not establish that the law at issue was clearly "beyond debate" in this Circuit in 1984.

In addition to the inapplicability of *Butler* as explained in Section II.A above, the statement relied upon by Plaintiffs was deemed by the *Butler* court itself as unnecessary to the ultimate holding in the case.  *See*, *Butler*,

567 F.2d at 891 (even if "no one from the [prosecutor's] office had made any direct promises to [the witness]," such a fact "**does not affect the outcome of the case**.") (emphasis added).  Thus, the reference in *Butler* is clearly dictum.  *See*, *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1173 (9th Cir. 2004) ("A statement is dictum when it is made during the course of delivering a judicial opinion, but is **unnecessary to the decision** in the case and is therefore not precedential.") (emphasis added).

Plaintiffs' argument that *Butler* was not dictum again conflates the issue as to who bore the responsibility under *Brady* (at least based on 1984 law).  Based on the then-existing law, it was the prosecutor who bore the ultimate responsibility.  Plaintiffs have not and cannot cite to a single decision pre-dating *Tennison* that held a police officer was liable (much less responsible) for carrying out the requirements applicable to prosecutors under *Brady*.  That the statement in *Butler* is dictum is also in accord with the overall context of the case because the question in *Butler* revolved around the prosecutor's obligations, not the extent those responsibilities applied to police officers.

Moreover, that the single sentence in *Butler* did not constitute "clearly established" law in 1984 is further supported by the absence of any other cases citing to *Butler* for such a holding by the relevant time period in 1984

and the lack of any citation to *Butler* in *Tennison*.  Plaintiffs attempt to minimize the importance of these omissions, yet the fact that no cases cited to the statements in *Butler* only supports the point that they did not constitute a "clear ruling" sufficient to place the issue "beyond debate" in this Circuit — whether in 1984, or even 25 years later.

## IV.    PLAINTIFFS MISCHARACTERIZE THE PURPORTED CONSENSUS AMONG OTHER COURTS REGARDING THE CLEARLY ESTABLISHED NATURE OF THIS ISSUE.

In the absence of Supreme Court and **binding precedent** in this Circuit, courts "look to whatever decisional law is available to ascertain whether the law is clearly established for qualified immunity purposes, including decisions of state courts, other circuits, and district courts." *Boyd v. Benton Cnty.*, 374 F.3d 773, 781 (9th Cir. 2004) (internal citations omitted).  In fact, "the absence of binding precedent in this circuit plus the conflict between the circuits is sufficient . . . to undermine the clearly established nature of a right" because "[t]hough [government officials] are charged with knowledge of constitutional developments, [they] are not required to predict the future course of constitutional law." *Lum v. Jensen*, 876 F.2d 1385, 1389 (9th Cir. 1989) (quoting *Wood v. Strickland,* 420 U.S. 308, 322 (1975)).

The landscape of the law pertaining to the extent, if any, *Brady* obligations applied to police officers was anything but clear in 1984. Plaintiffs purport that the "vast majority" of courts to address this issue have held it was clearly established prior to 1984, but none of the cases on which Plaintiffs rely were published prior to 1984. Since the relevant qualified immunity inquiry is "assessed in light of the legal rules that were 'clearly established' **at the time [of the alleged unlawful action]**," *Wilson, supra*, 526 U.S. at 614 (emphasis added), it is impossible for Detectives Smith and Parra to have been aware of these holdings during their criminal investigation in 1984 and rely on them for clearly established law. *See*, *Capoeman v. Reed*, 754 F.2d 1512, 1515 (9th Cir. 1985) (granting qualified immunity and rejecting consideration of decisions published after the relevant time period: "because these are post-incident decisions, they cannot determine whether the law was then clearly established.")

A. **Based on a Recent California State Court Decision Published After the Opening Brief in the Instant Case, It Is Apparent That There is Still a Split Between This Circuit and California State Courts On Who is Ultimately Responsible For a Purported *Brady* Violation Which Further Indicates That Lack of Clearly Established Law on**

16

<u>**This Issue.**</u>

Contrary to Plaintiffs' assertions that there was a "consensus" of courts in 1984 regarding this issue, even California state courts (which, like this Circuit, would provide legal guidance to Detectives' Smith and Parra within their jurisdiction) are in disagreement with this Circuit's recent *Tennison* decision. A recently published decision by the California Court of Appeal, decided on June 12, 2014, provides further support that the prosecutors are the ones ultimately responsible for the obligations under *Brady,* which includes learning of any potential exculpatory evidence, even if the purported evidence is known only to police.

In *People v. Davis*, 226 Cal.App.4th 1353 (2014), published approximately a month after Appellants' Opening Brief in the instant case was filed, the California Court of Appeal emphasized and reiterated, throughout the holding, that the ultimate party responsible for the obligations under *Brady* is the **prosecution**. In *Davis*, the Court considered a prisoner's appeal of a post-conviction motion for review of a police officer's records filed by the San Franscisco District Attorney's Office "to ensure compliance with its obligations under *Brady*" upon receiving notice that potential *Brady* information was contained in the records. *Id*. at 1362-1363; 1369. The Court set out the guiding legal principal that "under *Brady*, the **prosecution**

must disclose to the defense any evidence that is favorable to the accused and is material on the issue of either guilt or punishment." *Id.* at 1363 (internal citations omitted) (emphasis added). The Court then emphasized that "because the *Brady* rule encompasses evidence known only to police investigators and not to the prosecutor, **it is incumbent upon the prosecutor to learn of any favorable evidence known to the others acting on the government's behalf in [a] case, including the police.**" *Id.* (internal citations omitted) (emphasis added).

In dismissing the prisoner's appeal, the Court repeated throughout that *Brady* imposed the disclosure obligations on the prosecutor, not any other actor. *See*, *id.* at 1367-1369 ("*Brady* imposes disclosure obligations on the **prosecution**"; "*Brady* imposes disclosure obligations on the **prosecution**, and, as far as we are aware, a criminal defendant does not have the constitutional right to participate in the procedure that the **prosecution uses to ensure compliance with its obligations** under *Brady*"; "*Brady* imposes disclosure obligations on a **prosecutor**") (emphasis added).

Furthermore, in distinguishing between the *Pitchess* procedure to obtain police officer personnel files under California law and the obligations under *Brady*, *Davis* again reiterated the *Brady* obligation as applying solely to the prosecutor. *See*, *id.* at 1374 ("the People used the *Pitchess* procedure

to perform its obligations under *Brady*. *Brady* holds that the **prosecutor's failure** to disclose to the defense . . .”; the *Pitchess* proceeding was “initiated by the People in order to comply with its obligations under *Brady*”; “prosecutor’s duties of disclosure”) (emphasis added).

The repeated statements by *Davis* emphasizing that the *Brady* duty is “incumbent” on the prosecutor, while, at the same time, saying nothing about how other actors (such as police officers) jointly bear the responsibility for *Brady* obligations is telling. If other actors (such as police officers) were under the same duties to disclose as the prosecutor, then the *Davis* court’s requirement that the prosecutor’s office file the underlying motion to fulfill its disclosure duties under *Brady* would not have been necessary.

*Davis* simply reiterated the long-standing rule in California that the ultimate responsibility for complying with *Brady* is squarely on the prosecutor. *See, e.g., In re Ferguson*, 5 Cal.3d 525, 532 (1971) (the administration of justice “requires recognition of a **duty on the part of the prosecution** to disclose evidence to the defense in appropriate cases.”) (emphasis added); *Engstrom v. Superior Court* 20 Cal.App.3d 240 (1971), disapproved on other grounds in *Hill v. Superior Court*, 10 Cal.3d 812 (1974).

In *Engstrom*, the Court concluded that the prosecutor must obtain for the defense records of felony convictions of witnesses where such information, although available to the prosecutor, was not actually in his possession. *Id*. at 243. In doing so, *Engstrom* held that "court should **require the prosecution** to make diligent good faith efforts to obtain and make available to the defense pertinent information in the possession of other agencies which are parts of the criminal justice system." *Id*. at 243-244) (emphasis added).

Accordingly, *Engstrom's* holding imposed the disclosure duty on the prosecutor and, while it could have, nowhere in *Engstrom* did the Court suggest that the outside agencies from which prosecutors should obtain information had an independent obligation under *Brady*. The emphasis on a prosecutor's duty (as opposed to a police officer's duty) under *Brady* is further bolstered by California cases continuing right up until the 1984 investigation. *See*, *e.g.*, *In re Gary G.*, 115 Cal.App.3d 629, 639 (1981) ("due process does require the prosecution to disclose all material evidence favorable to the accused."); *People v. Shaparnis*, 147 Cal.App.3d 190, 193 (1983) (announcing that *Brady* applied to "**suppression by the prosecution** of evidence" and the subsequent *In re Ferguson* decision "imposed a **stricter duty upon prosecutors**.") (emphasis added).

While the "clearly established law" standard does not require police officers to know changes in the legal landscape to the same degree as a legal scholar, even to a lawyer or judge reading the above California state opinions prior to the 1984 investigation, it would not be entirely clear that police officers had an independent obligation for carrying out the duties set forth by *Brady*. At the very least, the rulings by California state courts combined with the disagreement among various Circuits, provide further support that, when reviewing the legal landscape in Los Angeles, California in 1984, the law was far from clearly established regarding what extent, if any, police officers bore personal responsibility to carry out the obligations imposed by *Brady*.

**B.     The Numerous Out-of-Circuit Cases Identifying the Lack of Consensus on this Issue Only Further Support that the Law Was Not Clearly Established in 1984 and Is in Flux To This Day.**

Plaintiffs further assert that the courts that have reviewed this *Brady* issue since 1984 agree that the law was clearly established at the time and there is no disagreement on this issue today, but Plaintiffs' citations of case law for this proposition are inaccurate and grossly mischaracterize the state

of the law.[5]  Indeed, Plaintiffs' mere listing of cases from the Fifth,

Eleventh, Fourth, and Second Circuits does not mean that there was an

overwhelming consensus of whether the law was clearly established in 1984.

To the contrary, courts surveying the legal landscape in 1984 have been split

as to whether the law was clearly established regarding the extent *Brady*

applied to police officers.

Even as recently as 2010, the **Fourth Circuit** has recognized the

continuing uncertainty on this issue.  In *Lynn v. Tarney*, 405 Fed.Appx. 753,

752, 2010 WL 5394849, *7 (4th Cir. 2010), the Court explained that "[t]his

court's jurisprudence in respect to the cognizability of *Brady*-type claims

against law enforcement officers remains in a **state of uncertainty.**"

(Emphasis added, *comparing Jean v. Collins,* 221 F.3d 656, 658–63 (4th

---

[5] For example, Plaintiffs cite to *Goodwin v. Metts*, 885 F.2d 157, 162 (4th Cir. 1989), *overruled in part by Albright v. Oliver*, 510 U.S. 266 (1994), however as identified in the AOB (p.39 n.16), *Goodwin* is a malicious prosecution case and does not even refer to *Brady*, let alone reach any holding regarding police officers being bound by *Brady*.  In addition, Plaintiffs' citation to *Walker v. City of New York*, 974 F.2d 293 (2nd Cir. 1992), can hardly be construed as evidence of "clearly established law." The issue before the court was whether police have an independent *Brady* obligation to disclose exculpatory information to the defense.  *Walker*, 974 F.2d at 299.  The court even recognized that "*Brady* does not discuss the relative disclosure obligations of police and prosecutor" and the plaintiff in the case did "not allege, however, that Detective Powell or any other police officer concealed any exculpatory evidence from the prosecution team." *Id*. at 298-299.

Cir. 2000) (Wilkinson, J., concurring in the denial of rehearing en banc by an equally divided en banc court) *with id.* at 663–77 (Murnaghan, J., dissenting from the denial of rehearing en banc by an equally divided en banc court).)

As anticipated in the AOB (p.38 n. 15), Plaintiffs' attempt to distinguish *Jean v. Collins* by stating it is a concurring opinion that conflicts with *Goodwin* only proves the Detectives' point that the law is unsettled on this issue. Even the Supreme Court this term reiterated that conflicting cases are insufficient to defeat the defense of qualified immunity due to lack of clearly established law. In *Lane v. Franks*, 134 S. Ct. 2369, 2382 (June 19, 2014), the Court held that a government official was entitled to qualified immunity because there were conflicting cases in the circuit and it was unclear which applied. The Supreme Court stated "this debate over [which case] applies to [the official's] claim only highlights the dispositive point" that precedent did not provide clear notice of the law. *Id.* at 2382. Furthermore, the Court rejected the argument that decisions in two other circuits were sufficient to put the official on notice, because those precedents conflicted with the other circuit precedent and therefore "the question was not 'beyond debate' at the time [the official] acted." *Id.* at 2383. Therefore, the fact that *Jean* and *Lynn* identify the unsettled nature in precedent on this

issue supports that the law is not clearly established.

As explained in *Jean*, the importance of the unsettled nature of this issue cannot be dismissed because, historically, courts found important policy reasons for makings prosecutors (not police officers) solely responsible for the disclosure duty under *Brady*. *Jean*, *supra*, 221 F.3d at 667 ("the State's *Brady* obligations to criminal defendants is discharged through the instrumentality of the prosecutor"). Importantly, prosecutors, in the exercise of their prosecutorial duties (including disclosures of *Brady* material), enjoy absolute immunity, whereas a similar obligation on police officers is not accompanied with the same protections, therefore an independent *Brady* duty on police officers would "widen the legal gulf between prosecutors and police to such an extent as to make scapegoats of police for every item of evidence discovered post-trial." *Id*. at 661. In addition, since the ultimate responsibility is on the prosecutor for disclosing *Brady* material to the defense, the remedy for *Brady* violations is to have defendants' convictions overturned. *Id*. To further impose responsibility on officers under § 1983 for internal miscommunications that are imposed on the prosecutor would have § 1983 suits and *Brady* doctrine "heading in diametrically opposed directions" and "set up a continual exercise in finger-pointing between prosecutors and police" that would "thrust the federal

courts deep into the operations of state prosecutors' offices." *Id*.

Moreover, imposing the ultimate disclosure duty under *Brady* on prosecutors more appropriately squares with the functions of prosecutors versus law enforcement. Since prosecutors are educated and well-versed in the law, they are in a better position than law enforcement to evaluate and make legal determinations on whether information qualifies for disclosure under *Brady*.

These reasons support why it would not have been "readily apparent" to Detectives Smith and Parra in 1984 that they had independent duties under *Brady*. That the Ninth Circuit in 2009 in *Tennison* first imposed such a duty on police officers does not establish that the law was "beyond debate" in 1984. *See*, *Wilson, supra,* 526 U.S. at 617-18 (in the context of qualified immunity, "[i]f judges thus disagree on a constitutional question, it is unfair to subject police to money damages for picking the losing side of the controversy.")

Furthermore, as predicted in the AOB (pp. 39-41), Plaintiffs misconstrued the effect of *Moldowan v. City of Warren*, 578 F.3d 351, 363 (6th Cir. 2009). Even though *Moldowan* ultimately concluded that the protections of *Brady* should also extend to investigating police officers, the Court in that case indicated that, as of 2009, it "had not yet directly

addressed" the issue whether *Brady* should extend to investigating police officers and it cited cases reaching a similar holding. *Id*. at 378, 381. In addition, the vigorous concurrence and dissent in *Moldowan* shows that even judges in 2009 disagreed on the issue. *Id*. at 401 (Kethledge, J., concurring in part and dissenting in part) ("the *Brady* duty, as stated by the *Brady* Court, was imposed on the prosecutor; and in cases since, **the Supreme Court has never imposed this absolute duty on law enforcement officials other than the prosecutor**." (emphasis added.)) Thus, *Moldowan* only provides further support that there was no clearly established law in 1984 that police officers had a personal duty to perform the obligations that *Brady* expressly imposed on prosecutors.

Lastly, Plaintiffs argue that the law is not in flux today, citing to cases in the Third, Tenth, and Sixth circuit, yet ignoring the numerous recent cases cited in the AOB that have specifically concluded that the scope of a police officer's duty under *Brady* remains an unsettled area of law.[6] Just because

---

[6] *See*, *McCaffrey v. City of New York*, 2013 WL 494025, *11 (S.D.N.Y. 2013) ("the Second Circuit has considered *Brady* violations as they pertain to prosecutors and municipalities specifically rather than police officers."); *Moreta-Ramirez v. Lemert*, 156 F.Supp.2d 138, 142 (D. Puerto Rico 2001) ("*Brady* does not express a view as to the duty of police officers to disclose exculpatory evidence"; "the constitutional right claimed by the Plaintiffs is not currently recognized and it is of a debatable nature"); *Reid v. Simmons*, 163 F. Supp. 2d 81, 95 (D.N.H. 2001) ("the notion that police officers can be

some courts have resolved the issue does not take away from the fact that other courts find the issue debatable.  This disagreement among legal minds is the essence of the clearly established prong of qualified immunity.  If jurists today do not agree on the issue, then certainly officers in Detectives Smith and Parra's situation in 1984 cannot be expected to predict the future course of the law.  *Wilson, supra,* 526 U.S. at 617-18 ("[i]f judges thus disagree on a constitutional question, it is unfair to subject police to money damages for picking the losing side of the controversy.")

## V.    PLAINTIFFS' ARGUMENT THAT POLICE OFFICERS HAVE ALWAYS BEEN BOUND BY *BRADY* DOES NOT WITHSTAND EVEN MINIMAL SCRUTINY.

Plaintiffs expend substantial space in their answering brief to discount the plain meaning and effect of *Kyles v. Whitley*, 514 U.S. 419 (1995), in arguing that Supreme Court opinions prior to *Kyles* support the conclusion that police officers have "always been bound by *Brady.*"  (AB at pp. 24-35.) In addition to overstating the purported consensus of courts regarding the applicability of *Brady* to police officers, Plaintiffs also understate the importance of the Supreme Court's holding in *Kyles*, with respect to both the

personally civilly liable for conduct giving rise to *Brady* violations is a relatively recent development in the law and, even today, its character and contours remain somewhat ill-defined, particularly in this circuit.")

timing of the opinion and its substantive analysis.[7]

Since *Brady* and prior to *Kyles*, the Supreme Court had not issued any opinions addressing the question of whether a *Brady*-based due process violation occurs if the subject exculpatory evidence happened to be in the possession of a police officer but not the prosecutor. More importantly, even to this date, the Supreme Court has never held that police officers have a personal responsibility to perform the *Brady* obligations. Even *Kyles* reiterated the long-standing rule that the party responsible for performing the obligations under *Brady* is the prosecutor (even if the evidence is known only to police). *Haley*, *supra,* 657 F.3d at 49 ("In *Kyles v. Whitley,* the Court held that the disclosure obligation imposed by *Brady* extends to evidence known only to police officers, but that the responsibility for obtaining and disclosing such evidence remains the duty of the prosecutor, and not the police officer.").

Indeed, the Supreme Court's decisions after *Brady* addressed *Brady* nuances and it was not until *Kyles* that the connection between *Brady* and police officers was addressed:

Over time, *Brady's* disclosure requirements have expanded. In

---

[7] Even the District Court's ruling below stated that there was "an absence of Supreme Court cases regarding police officer's duties under *Brady*" in 1984. (1 AER 9.)

> [*United States v.*] *Agurs* [427 U.S. 97, 96 S.Ct. 2392 (1976)],
> the Court held that where the evidence is "obviously of such
> substantial value to the defense[,]" prosecutors have a
> constitutional duty to turn it over, even in the absence of a
> request. 427 U.S. at 110, 96 S.Ct. 2392. The prosecution is
> also required to reveal the contents of plea agreements with
> major government witnesses. *Giglio v. United States,* 405 U.S.
> 150, 154, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). The Court's
> decision in *United States v. Bagley,* 473 U.S. 667, 105 S.Ct.
> 3375, 87 L.Ed.2d 481 (1985), made clear that *Brady* included
> impeachment evidence, and ***Kyles v. Whitley***, 514 U.S. 419,
> 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995), **established that the
> disclosure obligations included information held by police
> but unknown to prosecutors.**

*Wade v. Brady*, 460 F.Supp.2d 226, 245 (D. Mass. 2006) (emphasis added).

The timing of *Kyles* and the importance of *Kyles* in the Supreme

Court's addressing the connection between *Brady* and exculpatory evidence

in the possession of police officers, are consistent with the granting of

qualified immunity in the instant case. *Kyles* was decided eleven years after

Plaintiffs' alleged *Brady* violations in the instant case.

Plaintiffs cannot circumvent the clear and controlling implications of

*Kyles.* The Supreme Court's incremental expansion and clarification of

*Brady* with holdings that addressed various nuances related to the scope and

breadth of *Brady* helped lead to the unsettled nature of whether *Brady*

applied to police office officers. The lack of any holding in this Circuit by

1984, combined with the disjointed and sometimes conflicting developments

in courts on this issue, warrant the granting of qualified immunity on

Plaintiffs' *Brady* claims in this case.

## VI.    **CONCLUSION.**

For the foregoing reasons, Defendants J.D. Smith and Eric Parra respectfully request qualified immunity be granted solely as to Plaintiffs' "*Brady*" claims against them on the grounds that, at the time of their underlying 1984 investigation, the law was not clearly established to what extent, if any, the requirements of the United States Supreme Court *Brady* decision applied to police officers.

Dated:  August 13, 2014          Respectfully submitted,

LAWRENCE BEACH ALLEN & CHOI, PC


By    */s/  George E. Morris Jr.*
        Michael D. Allen
        George E. Morris Jr.
        Attorneys for Defendants/Appellants
         J.D. Smith and Eric Parra

## CERTIFICATE OF COMPLIANCE

Pursuant to Ninth Circuit Rule 32(a)(7)(c), I certify that the Opening

Brief is double spaced, proportionately spaced (Times New Roman), has a

typeface of 14 points and contains approximately 6,992 words.


Dated:  August 13, 2014          LAWRENCE BEACH ALLEN & CHOI, PC


                         By___*/s/  George E. Morris Jr.*_____
                                Michael D. Allen
                                George E. Morris Jr.
                                Attorneys for Defendants/Appellants
                                 J.D. Smith and Eric Parra

## CERTIFICATE OF SERVICE

I hereby certify that on August 13, 2014, I electronically filed the foregoing **APPELLANT'S OPENING BRIEF** with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

_____ */s/  George E. Morris Jr.*_____